1  Jeremy V. Richards (CA Bar No. 102300)
   John W. Lucas (CA Bar No. 271038)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA  90067
   Tel: 310/277-6910 / Fax: 310/201-0760
4  E-mail:  jrichards@pszjlaw.com
           jlucas@pszjlaw.com
5

6  Attorneys for David K. Gottlieb, Chapter 11 Trustee of the
   Estates of Solyman Yashouafar and Massoud Aaron
   Yashouafar

7

8            **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

             **SAN FERNANDO VALLEY DIVISION**
10

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,[1]<br><br>               Debtors. | Case No.: 1:16-bk-12255-GM<br><br>Chapter 11<br><br>Jointly Administered |
| In re:<br><br>SOLYMAN YASHOUAFAR,<br><br>               Debtor. | Case No.: 1:16-bk-12255-GM<br><br>Chapter 11 |
| In re:<br><br>MASSOUD AARON YASHOUAFAR,<br><br>               Debtor. | Case No.: 1:16-bk-12408-GM<br><br>Chapter 11 |
| Affects:<br><br>☑  Both Debtors<br>☐  Solyman Yashouafar<br>☐  Massoud Aaron Yashouafar<br><br>               Debtors. | **MOTION FOR ORDER APPROVING CHAPTER 11 TRUSTEE'S SETTLEMENT WITH HOWARD ABSELET AND ISRAEL ABSELET; MEMORANDUM OF POINTS AND AUTHORITIES IS SUPPORT THEREOF**<br><br>Date:     August 22, 2017<br>Time:    10:00 a.m.<br>Place:   Courtroom 303<br>            United States Bankruptcy Court<br>            21041 Burbank Blvd.<br>            Woodland Hills, CA  91367 |

---

[1] The Debtors, together with the last four digits of each Debtor's social security number are:  Solyman Yashouafar (5875) and Massoud Aaron Yashouafar (6590).  The Debtors maintain a business address of 16661 Ventura Blvd., Suite 600, Encino, CA 91436.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# I.

## INTRODUCTION

By way of the Motion, the Trustee seeks approval of a compromise memorialized in the Agreement that will resolve the Trustee's and the Abselets' competing claims against or interest in certain property the Debtors owned, directly or indirectly. As set forth in greater detail herein and the Agreement, and subject to the recovery of the property discussed herein and the Agreement and liquidation thereof, the Agreement provides that after the payment of expenses, (a) the Abselets will receive (i) the first $5,000,000 of proceeds (the "**Minimum Threshold**") and (ii) two-thirds of cash proceeds thereafter until the Abselets' claims are paid in full and (b) the Trustee, on behalf of the Debtors' estates (the "**Estates**"), will receive one-third of the remaining proceeds and any excess proceeds or other property after the Abselets' claims are paid in full. The Agreement's beneficial terms to the Estates and satisfaction of the prevailing legal standard merit approval.

# II.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this matter is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

# III.

## STATEMENT OF FACTS

### A.    General Background

On August 3, 2016, petitioning creditors Fereydoun Dayani, Yona Samih, and N&S Investment, LLC c/o Sina Navidbakhsh (the "**Petitioning Creditors**") filed an involuntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Bankruptcy Code**") against debtor Solyman Yashouafar ("**Solyman**"), bearing case number 16-12555-GM. On September 9, 2016, the Petitioning Creditors and Solyman entered into a Stipulation for Entry of Order for Relief and Appointment of Chapter 11 Trustee [Docket No. 79], which stipulation was granted by Order entered on September 12, 2016 [Docket No. 82].

On September 16, 2016, the United States Trustee (the "**UST**") filed its Notice of Appointment of Chapter 11 Trustee appointing David K. Gottlieb as Chapter 11 Trustee in Solyman's chapter 11 case [Docket No. 91]. On September 16, 2016, the UST filed an Application for Order Approving Appointment of Trustee [Docket No. 93], which application was granted by Order entered on September 16, 2016 [Docket. No. 94]. On September 19, 2016, the Court entered an Order for Relief and Order to File Schedules, Statements and Lists(s) [Docket. No. 97].

On August 3, 2016, the Petitioning Creditors filed an involuntary petition for relief under the Bankruptcy Code against the Massoud Aron Yashouafar ("**Massoud**" and together with Solyman, the "**Debtors**"), bearing case number 16-12408. On September 9, 2016, the Petitioning Creditors and Massoud entered into a Stipulation for Entry of Order for Relief under Chapter 11 and Appointment of Chapter 11 Trustee [Docket. No. 92], which stipulation was granted by Order entered on September 20, 2016 [Docket. No. 94].

On September 16, 2016, the UST filed its Notice of Appointment of Chapter 11 Trustee, appointing David K. Gottlieb as Chapter 11 Trustee in Massoud's chapter 11 case [Docket No. 104]. On September 16, 2016, the UST filed an Application for Order Approving Appointment of Trustee [Docket No. 106], which application was granted by Order entered on September 20, 2016 [Docket No. 110]. On September 19, 2016, the Court entered an Order for Relief and Order to File Schedules, Statements and Lists(s) [Docket No. 109].

Massoud filed his schedules, statements and lists on or about September 30, 2016 [Docket Nos. 150 and 152] and Solyman filed the same, on or about October 7, 2016 [Docket Nos. 152 and 153].

On September 30, 2016, the Trustee filed the *Motion for Order Directing Joint Administration of Related Cases Pursuant to Federal Rule of Bankruptcy Procedure 1015(b)* [Docket No. 134]. By this motion, the Trustee sought authorization to jointly administer the chapter 11 cases of the Debtors for procedural purposes only. On October 18, 2016, the Court granted by the motion by entry of orders [Docket No. 170] in the main case and [Docket No. 188] in Massoud's case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:94246.3 32274/001

**B.**    **The Claims of Howard and Israel Abselet**

In 2008 and 2009, the Debtors borrowed money from Howard in the amount of $6,000,000 ("**Howard's Loan**"). After the Debtors failed to repay Howard's Loan, Howard commenced that action entitled *Howard L. Abselet v. Alliance Lending Group, Inc. et al.*, Case No. 2:11-cv-00815-JFW(JEMx) in the ("**California District Court**") United States District Court for the Central District of California ("**Howard's Collection Action**"). On or about August 10, 2012, Howard obtained a judgment (the "**Judgment**") in Howard's Collection Action against, among others, the Debtors.

To enforce the Judgment, Howard obtained or pursued the following:

- An abstract of judgment against Massoud's residence at 910 North Rexford Drive, Beverly Hills, California 90210 (the "**Rexford Property**") and Solyman's then residence at 580 Chalette Drive, Beverly Hills, California 90210 (the "**Chalette Property**," and together with the Rexford Property, the "**Residences**").

- A charging lien against the Debtors' interests in Encino Corporate Plaza, L.P. ("**ECPLP**"), which interests constitute 100% of the interests in ECPLP.

- A charging lien issued by the United States District Court for the District of Nevada against the Debtors' interest in various entities.

- On January 29, 2015, Howard levied on all of the Debtors' stock (the "**RLI Stock**") in Roosevelt Lofts, Inc. ("**RLI**"), all of the Debtors' stock (the "**ECPB Stock**") in ECP Building, Inc. ("**ECP Building**"), and all of the Debtors' stock (the "**APII Stock**," and collectively with the RLI Stock and the ECPB Stock, the "**Stock**") in Alliance Property Investments, Inc. ("**APII**"); and  on April 29, 2015, Abselet was the successful bidder at the execution sales of all of the Stock (the "**Execution Sale**").

- As set forth in the Agreement, Howard also commenced other actions for the purpose of enforcing the Judgment.

Howard asserts that the balance owed on the Judgment as of the Petition Date is approximately $10,646,470, and continues to accrue interest, associated fees, and costs.

In 2001, Sina Abselet ("**Sina**"), Howard's father, lent the Debtors and their companies, including S&R Equities ("**S&R**") and Madison Equities ("**Madison**") $2,000,000 (the "**$2M Loan**"), which Israel Abselet ("**Israel**" and together with Howard, the "**Abselets**"), Howard's brother, asserts was assigned to him by Sina. The $2M Loan was secured by deeds of trust against the Residences (as defined below). The principal balance of the $2M Loan was subsequently

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

reduced by $250,000 but continued to accrue interest and default interest for a number of years. As of May 31, 2017, Israel asserts that the outstanding amount on the $2M Loan is approximately $3,892,531, and continues to accrue interest, fees, and costs.

**C.      The Oklahoma Action and Receivership and APII Stock**

Howard contends that he owns Alliance Property Investments, Inc. ("APII").  APII has a claim to approximately $19 million of proceeds (the "**FNC Proceeds**") derived from a receiver's sale of the First National Center building in Oklahoma City, Oklahoma (the "**First National Center**"). The receiver's sale and disputes relating to ownership of the FNC Proceeds have been, and are being, overseen by the United States District Court, Western District of Oklahoma (the "**Oklahoma District Court**").  There are a number of material claims to the FNC Proceeds, including the following.

One or more entities purportedly controlled by the Neman family and related companies (collectively, the "**Nemans**") contend that they bought  the First National Center, owned it outright at the time of the receiver's sale, and are entitled to all of the net proceeds.  Howard, and the Barlava family and its companies (collectively, the "**Barlavas**"), contend that the Nemans are merely equitable mortgagees of the First National Center and, at most, are entitled to recover approximately $7 million of the FNC Proceeds.

While it is undisputed that one or more of the Barlavas owned interests equivalent to 50% of the First National Center during or prior to the summer of 2012, Howard contends that the Barlavas sold their interests in the First National Center to the Debtors or their affiliates for $2 million before the Nemans made the equitable mortgage, and Howard is entitled to all of the FNC Proceeds through his ownership of APII.  The Barlavas contend that they owned interests equivalent to 50% of the First National Center at the time of receiver's sale, their ownership was not subject to the lien of the Nemans' equitable mortgage, and they are entitled to half of the FNC Proceeds and "equalizing distributions" due to alleged unequal "distributions" to the Debtors.  Whether the Barlavas were paid a portion of their sale price ($1.35 million of $2M) for their interests in the First National Center also is at issue.

DOCS_SF:94246.3 32274/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

APII's interest in the FNC Proceeds is worth anywhere between $0 (*i.e.*, if the Nemans owned the property outright on the date of the receiver's sale) and approximately $11 million (if APII is entitled to all of the FNC Proceeds, after paying off the Nemans' equitable mortgage).

In January of 2015, pursuant to the Judgment, Howard purported to levy on the APII Stock and, at an ensuing execution sale, purported to purchase the stock for $20 (the "**APII Execution Sale**").  Subsequently, in Howard's Collection Action, the Debtors challenged the APII Execution Sale, claiming, *inter alia*, that the APII Stock was certificated and that Howard had not properly levied on the APII Stock by causing the levying officer to take possession of the certificates representing the APII Stock.  By order entered in January of 2016, the District Court denied the Debtors' motion to set aside the APII Execution Sale.  The Trustee contends that the District Court found that the Debtors were estopped from asserting that the APII Stock is certificated; Howard contends that no one, including the Trustee, may contest Howard's acquisition of the APII Stock at the APII Execution Sale.  While the Debtors appealed the District Court decision, the Trustee determined not to pursue the appeal.

Instead, the Trustee commenced an adversary proceeding, Case No. 1:17-ap-01027 (the "**APII/RLI Stock Action**") contending that the APII Stock was, at the relevant time, certificated, that the levy and execution sale of the stock were invalid for failure to take possession of the certificates and contending that, pursuant to the "strong arm powers" granted to the Trustee pursuant to Bankruptcy Code § 544(a), the Trustee was not estopped from arguing that the APII Stock was certificated.  The Trustee contended that even if the certificates relied upon by the Debtors for the California District Court were in fact fabricated after the APII Execution Sale, there were in fact preexisting certificates representing the APII Stock issued in 2001.

Howard filed a motion with the California District Court seeking an order withdrawing the reference of this adversary proceeding.  The Trustee opposed the motion but, by minute order entered June 1, 2017, the California District Court granted the motion.  In doing so, the California District Court indicated that, in its opinion, it had already adjudicated the issues raised in the complaint, an indication that it might ultimately grant Howard's motion to dismiss the complaint.

DOCS_SF:94246.3 32274/001

Absent the Settlement, if Howard ultimately prevails on the issue of the validity of the APII Execution Sale in the adversary proceeding, FNC Proceeds he receives (which, as discussed above, could be substantial) will not be credited against the Judgment.  Under the Settlement, a portion of the FNC Proceeds will paid to the Estates after the Minimum Threshold is satisfied, and all FNC Proceeds will be paid to the Estates after the Abselets' claims are satisfied.

**D.     Roosevelt Loft Funds**

As this Court is aware, a custodian is currently holding approximately $1.5 million of funds which, under the confirmed plan of reorganization of Roosevelt Lofts, LLC ("**RLL**"), are payable to Roosevelt Lofts, Inc. ("**RLI**"), the sole member of RLL.  It appears from filings with the California Secretary of State that Massoud and Solyman are the sole officers and directors of RLI. However, the ownership control of RLI are disputed.

Howard claims to be the holder of at least approximately 46% of the RLI Stock by virtue of a purported levy on all the Debtors' interests in RLI.  It is undisputed that the Barlavas owned approximately 46% of the RLI Stock at one time.  In proceedings pending before the California District Court, Howard asserts that the Barlavas sold their stock in RLI to the Debtors in 2012 and that his levy on the Debtors' interests in RLI also extended to the 46% interest formerly owned by the Barlavas.  The Trustee commenced an investigation into the Barlavas' ownership interests in RLI; documents reviewed by the Trustee indicate that the Barlavas likely sold their interests in RLI to the Debtors in August of 2012.  Further, it appears from the Trustee's investigation that prior to that sale, the Barlavas may have received a disproportionately large share of dividends made by RLI to its shareholders (and therefore may owe funds to the other shareholders as a result).  The only others asserting ownership of stock in RLI are Hamid Joseph Nourmand and/or his wife (collectively, "**Nourmand**").  At this time, the Trustee does not believe there are any reasons to challenge Nourmand's interest in RLI, but Howard believes that Nourmand (the Abselets' cousin) may have sold his interest in RLI to the Debtors, and is pursuing that claim.  As more fully set forth below, the Trustee believes that Howard's levy and the execution sale of the RLI stock can be set aside pursuant to Bankruptcy Code § 544(a)(1), (2) and applicable state law for the same reasons as the APII Stock.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.    APII Stock and RLI Stock Adversary Proceeding**

The Trustee's initial efforts to resolve the disputed issues relating to the APII Stock and the RLI Stock with Howard were not successful. As referenced above, on March 24, 2017, the Trustee commenced the APII/RLI Stock Action to determine the Debtors' Estates' interest in the Stock.

In response, Howard filed a motion with the California District Court to withdraw the reference of the APII/RLI Stock Action. The Trustee filed an objection and Abselet filed a response. In short, Howard contends that the Trustee's filing of the APII/RLI Stock Action is an attempt to circumvent the California District Court's limited rulings that relate to the Stock. The Trustee commenced the APII/RLI Stock Action because he believes that, as a chapter 11 trustee of the Debtors' estates, he has independent claims to the Stock that are not subject to the California District Court's rulings nor is the Trustee estopped by the Debtors' prepetition conduct that caused the California District Court to issue its limited estoppel rulings regarding the Debtors and the Stock. In addition, Howard also filed with this Court a motion to dismiss the APII/RLI Stock Action.

**F.    Rexford Property and Chalette Property Action**

Prior to the Petition Date, Massoud and his spouse owned and he and his family resided at the Rexford Property, a Beverly Hills residence worth approximately $14 million. Also, Solyman and his spouse owned and he and his family resided at the Chalette Property, a Beverly Hills residence worth approximately $8 million to $9 million on the Petition Date. The Rexford Property and Chalette Property were encumbered by certain deeds of trust that secured certain debts of the Debtors.

Around January 2015, Massoud's brother-in-law, Jack Nourafshan, through an entity he controls, purchased a promissory note that was secured by two separate deeds of trust against the Rexford Property and Chalette Property. Subsequently, Nourafshan, through other companies he controls acted to foreclose on the Rexford Property and Chalette Property. Nourafshan immediately rented the Rexford Property to Massoud under a two year lease at a rate of $25,000 per month. Nourafshan quickly sold the Chalette Property for a substantial profit (an approximate 90% return on an annualized basis in less than a couple of months). Massoud has never paid any rent, the lease has

since expired by its terms, yet Massoud and his family continue to enjoy the comforts of the Rexford Property.

On April 25, 2017, the Trustee commenced an adversary proceedings against Elkwood Associates, LLC and Fieldbrook, Inc., 1:17-ap-01040 (the "**Rexford/Chalette Action**"), which was amended on May 11, 2017. By the Rexford/Chalette Action, the Trustee seeks to (a) quiet title of the Rexford Property, (b) set aside the foreclosure sale of the Rexford Property, and (c) avoid the foreclosures of the Rexford Property and Chalette Property as actual and/or constructive fraudulent conveyances, in addition to other related relief.

As set forth in greater detail in the complaint, the Trustee alleges, among other things that (a) the foreclosure of the Rexford Property was void because the foreclosing party did not own the debt or security instruments relating to the Rexford Property, (b) irregularities in the foreclosure process requires setting aside the foreclosures, (c) the foreclosures were actually and constructively fraudulent due to the irregularities, lack of equivalent value, Massoud and Mr. Nourafshan (who controls the defendants) had a secret agreement and understanding as to how the Rexford Property and the Chalette Property, or their value, would be diverted from the Debtors' creditors to the benefit of the Mr. Nourafshan's family and/or Massoud, and to the detriment of those creditors, in addition to other reasons. The Trustee believes that part of this secret agreement and understanding would be that Massoud and his family would be permitted to live in the Rexford Property, rent free, for an indeterminate period of time but that the Chalette Home would be delivered vacant so that Mr. Nourafshan and his family could make a quick, and sizeable profit and return on their investment, which they did.

## G.    Sky Las Vegas Sale Proceeds and JCBL Trust

Prior to the entry of order of relief of the Debtors' cases, Nevada Investment Properties, LP ("**NIP**"), the owner of certain real property known as "Sky Las Vegas," located at 2700 Las Vegas Boulevard South, Las Vegas, Nevada (the "**Las Vegas Property**"), was in the process of selling the Las Vegas Property. During the pendency of these cases, the Las Vegas Property was in escrow to be sold by NIP to TAG Fund II, LLC, a Nevada limited liability company ("**TAG**"), or assignee, for a purchase price of $5.1 million.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:94246.3 32274/001

On or about January 11, 2000, Parinaz Yashouafar ("**Parinaz**"), Massoud's spouse, settled a trust by way of a Declaration of Trust (the "**JCBL Trust**"). One of the Trust Assets was and is a 20% ownership interest in Milbank Capital I ("**Milbank Capital**"), which in turn holds a 50.5% interest in NIP. JCBL Trust's share of the proceeds from the sale of the Las Vegas Property totaled approximately $479,500 (the "**JCBL Proceeds**"). Pursuant to that certain stipulation (the "**Stipulation**") [Docket. No. 200], entered into by and between, inter alia, the Trustee and the JCBL Trust and approved by order entered on November 15, 2016 [Docket. No. 243], the JCBL Proceeds are being held in an account at Pacific Western Bank, in the name of JCBL Trust, but may not be distributed pending resolution of the Debtors' Estates' interest in such funds or until further order of this Court.

In addition, S&R and Madison (which are among the entities subject to Howard's Nevada charging lien) each hold: (1) a direct 4.35% limited partnership interest in NIP; and (2) a 4.545% limited partnership interest in NIP through Milbank Capital I; for an aggregate holding of 17.79%. S&R and Madison are owned by the Debtors. After the closing of the Las Vegas Property's sale, the Trustee received approximately $645,000 on account of S&R's  and Madison's interest in NIP (the "**S&R and Madison Proceeds**").

**H.    The JCBL Trust Action**

The JCBL Trust was a fully revocable trust at the time it was created by Parinaz. On or about January 2, 2015, Parinaz amended the JCBL Trust (the "**First Amendment**"). By the execution of the First Amendment, Parinaz caused the JCBL Trust to be irrevocable.

On or about May 12, 2017, the Trustee commenced an adversary proceeding in this Court to determine the following: (a) setting aside the First Amendment and the related transfer as an actual or constructive fraudulent transfer; (b) declaring that the right to revoke the JCBL Trust is property of Massoud's Estate; (c) declaring that, upon exercise of the revocation of the JCBL Trust by the Trustee, the assets of the JCBL Trust (including, without limitation, the JCBL Proceeds) are, and will become property of Massoud's Estate; and (d) and other related relief.

DOCS_SF:94246.3 32274/001

# IV.

## OVERVIEW OF THE AGREEMENT

The following is a brief summary of the terms and conditions of the Agreement, qualified in its entirety by the actual provisions of the Agreement itself:

The Trustee releases any and all claims that the Estates have, or may have, in and to the RLI Stock, the APII Stock, any and all rights and remedies relating to either of them, and the proceeds thereof (the "**Abselet Shared Assets**"). In exchange, the Estates will receive a portion of the net recoveries from the Abselet Shared Assets, as set forth below.

The Abselets will control the liquidation of the Abselet Shared Assets, subject to consultation with the Trustee. If the Abselets elect not to pursue the Abselet Shared Assets, the Trustee may liquidate them as assets of the Estates.

The Trustee will control the prosecution and liquidation of assets of the Estates, which expressly include any and all claims and actions that arise out of the foreclosures on the Residences. The Abselets retain their independent rights to set aside the foreclosures of the Residence but any and all net recoveries are subject to the sharing provisions of the Agreement.

As the Estates have no equity in S&R and Madison, the Estates' equity interests in those assets are to be transferred to Israel on account of the $2M Loan. The Abselets will be charged with liquidating, winding up and dissolving Madison and S&R in accordance with applicable law.

It is anticipated that Israel, as a creditor or equity holder, will receive certain monies from the liquidation of Madison and S&R by virtue of the $2M Loan. It is also anticipated that Howard may receive some recoveries from the liquidation of ECPLP. Any and all net recoveries received from the foregoing sources are credited against the Minimum Threshold (*i.e.*, the first $5 Million (irrespective of when received by Howard and Israel) and toward the payment of the Abselets' claims in excess of $5 million. These recoveries do not, however, have to be shared with the Estates.

Funds received from the liquidation of the Abselet Shared Assets (and any pursuit of claims by the Abselets relating to the foreclosure of the Residences), the Abselet Credited Assets, and the assets of the Estates (except the Estates' share of net proceeds generated from the Abselet Shared Assets, which shall be retained by the Estates and not further shared with the Abselets), shall be

DOCS_SF:94246.3 32274/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

shared and distributed by and between the Abselets and the Estates as follows: (a) first, *pari passu*,

to reimburse the "Post-May 31 Fees" (*i.e.*, the reasonable fees and costs incurred by the Abselets in

collecting and liquidating the Abselet Shared Assets from and after May 31, 2017) and the Post-

Order Fees (*i.e.*, fees and expenses incurred by the Trustee (subject to ultimate allowance by the

Bankruptcy Court) incurred in collecting and liquidating assets of the Estates (including, without

limitation, any and all claims and actions arising out of the foreclosure of the Residences) from and

after May 31, 2017; (b) second, to the Abselets until they have received the Minimum Threshold

(*i.e.*, the first $5 million against their claims, which is $5 million of net proceeds received either

from the Abselet Shared Assets (including any pursuit by the Abselets of claims relating to the

foreclosure of the Residences), the Estates or the Abselet Credited Assets); (c) thereafter, until the

Abselets' claims are paid in full: (i) two-thirds to the Abselets; and (ii) one-third to the Trustee for

the benefit of the Estates.

     Pursuant to the order (the "**Approval Order**") approving the Agreement: (a) Howard's claim

will be allowed in the amount of approximately $11.8 million as of May 31, 2017, plus additional

accruals and accretions, as more fully set forth therein and (b) Israel's Claim is allowed in the

approximate amount of $3.89 million as of May 31, 2017, plus additional accruals and accretions as

more fully set forth therein.

     Pursuant to paragraphs 4 and 5 of the Approval Order, the Trustee validates certain liens held

or asserted by the Abselets in and to various assets of the Estates and, pursuant to paragraph 6 of the

Approval Order, confirms Howard's ownership of the ECP Building, the APII Stock and the RLI

Stock (subject to all of Howard's obligations under the Agreement).

     Subject to all of the terms and conditions of the Agreement, the parties thereto enter into

mutual general releases.  The Abselets' recourse to the Estates and their assets is limited to those

specific recoveries provided for under the Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# V.

## THE COURT SHOULD APPROVE THE PROPOSED

## AGREEMENT PURSUANT TO RULE 9019(a)

### A.    The Standard of Review

"The law favors compromise and not litigation for its own sake. . . ."  *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *see also Marandas v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993) (noting that compromises are favored in bankruptcy).  Rule 9019(a) of the Bankruptcy Rules ("Rule 9019(a)") provides in relevant part that "[o]n motion by the trustee and after notice and hearing, the court may approve a compromise or settlement." Rule 9019(a) commits the approval or denial of a settlement to the sound discretion of the bankruptcy court.  *See In re Stein*, 236 B.R. 34, 37 (D. Or. 1999).  The bankruptcy court, however, should not substitute its own judgment for the judgment of a trustee or a debtor.  *See In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

When deciding whether to approve a settlement, the bankruptcy court must determine if the settlement is reasonable under the circumstances of the case, fair and equitable, and in the best interest of the estate.  *See A & C Props.*, 784 F.2d at 1381.  The court is neither required to conduct a mini-trial on the merits of the settlement, *Port O'Call Invest. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976), nor determine that the settlement amount is the amount that would have been paid had the matter been tried.  The court need only "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)); In re *Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991).

The U.S. Supreme Court stated in *Protective Committee v. Anderson*, 390 U.S. 414, 424 (1968), that in order to approve a proposed settlement under the then-extant Bankruptcy Act, a court must have found that the settlement was "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of

the wisdom of the proposed compromise."  The Ninth Circuit Court of Appeals has reiterated that in determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, a court should consider the following factors:  (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and the proper deference to their reasonable views in the premises (collectively, the "**Woodson Factors**").  *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F. 2d 610, 620 (9th Cir. 1988) (quoting *A & C Props.*, 784 F.2d at 1380).  It is not necessary that the conclusions reached in the consideration of each of the factors support the settlement, but taken as a whole, those conclusions must favor the approval of the settlement.  *See Pacific Gas*, 304 B.R. at 417 (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

**B.    The Agreement Satisfies the Rule 9019 Standard**

As discussed below, the Trustee believes the conclusion that must be drawn from consideration of the factors used in *A & C Props* and Woodson support Court approval of the proposed Agreement.

1.    Probability of Success / Complexity of Litigation

First, the proposed disposition of the APII Stock and RLI Stock under the Agreement ensures that the Estates will receive some portion of the FNC Proceeds after the Minimum Threshold is satisfied. If the Trustee did not settlement this aspect of the dispute he would be required to continue the litigation against Howard seeking to avoid Howard's foreclosure and execution against the APII Stock and RLI Stock. If Howard successfully defended against the Trustee's avoidance action, the Estates would be left with no recovery on account of these assets which could provide substantial value to reduce the Abselets' claims and to pay creditors of the Estates.

Second, the Trustee believes there is little if any equity in S&R and Madison. Thus, in light of Israel's claims against these entities, the Trustee believes that it is beneficial to assign the Estates' interest in these entities to Israel, who can then winddown and liquidate the assets for the purpose of satisfying direct creditor claims and pay down the Abselets' claims to the extent there are excess assets, as the Parties expect.

DOCS_SF:94246.3 32274/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Third, while the Trustee has asserted various claims regarding the transfers of the Residences, the Abselets believe they also have claims that are separate and distinct form the Trustee's. Rather than litigate any disputes regarding the proceeds of these recoveries, the Trustee believes that it will be cost effective, more efficient, and simpler to focus on the recovery of the Residences rather also litigating with the Abselets about the relative priority to the proceeds thereof.

With respect to each of three points described above, the Trustee also believes that it will benefit the estate to align the interests of the Estates with the Abselets since both parties share a common goal of maximizing the value of the Estates for the benefit of paying creditors' claims.  In each of the above matters, the Trustee believes he has a reasonable likelihood of success in such litigation independently of the Abselets; however, the Trustee recognizes there are risks and that the Agreement provides the best likelihood that the Estates will recovery property or cash that can be used to pay creditors' claims.

2.      Difficulties With Collection

This factor is neutral as the Trustee is not aware of any facts to indicate uncollectibility of the remaining unreconciled amount.

3.      Interests of Creditors

The Debtors' estates currently have little or no unencumbered assets while at the same time are subject to tens of millions of dollars of claims. Without the Agreement, the Trustee would not only have to succeed in his litigation against the Abselets, he would also have to succeed in his currently pending independent litigation regarding the Residences and also obtain favorable determinations in the Oklahoma Action. Now with the Agreement, the Trustee has eliminated the risk as it relates to the competing claims with the Abselets, further reduce legal expenses, and the Parties can collectively focus their efforts on obtaining favorable decisions regarding the assets that are the subject of this Agreement. Thus, it goes without saying that the Agreement will dramatically increase the chances of any recovery to creditors and upon favorable determinations the Agreement will help ensure that legal fees and other costs will have less of an impact on the distributions ultimately made to creditors of the Estates.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:94246.3 32274/001

Based upon the foregoing, the Trustee submits that the Settlement satisfies the test for approval of the Settlement, and is in the best interest of its creditors and should be approved by this Court.

**C.    Adequate Notice of the Motion Has Been Given**

Notice of the filing of this Motion has been given to all parties entitled to notice in accordance with Bankruptcy Rule 2002(a) and to all parties requesting electronic notice. Accordingly, adequate notice has been given.

**VI.**

**CONCLUSION**

**WHEREFORE,** the Parties respectfully requests that this Court enter an order (i) approving the Agreement, (ii) authorizing the Parties to enter into and take any and all actions reasonably necessary to effectuate the Agreement, and (iii) granting such other and further relief as the Court deems just and proper.

DATED: August 1, 2017                PACHULSKI STANG ZIEHL & JONES LLP


By: */s/ John W. Lucas* _____
        Jeremy V. Richards
        John W. Lucas


Attorneys for David K. Gottlieb, Chapter 11 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:94246.3 32274/001

# **EXHIBIT A**

**(Gottlieb Declaration)**

I, David K. Gottlieb, do hereby declare as follows:

1.    I am the duly appointed and acting chapter 11 trustee for Massoud Yashouafar and Solyman (collectively, the "**Debtors**"). The facts set forth herein are based upon my own personal knowledge except where stated to be upon information and belief. If called upon, I can and will competently testify to the facts stated herein.

2.    I make this declaration in support of the *Notice of Motion and Motion for Order Approving Chapter 11 Trustee's Settlement with Howard Abselet and Israel Abselet* (the "**Motion**"). All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Motion.

3.    I have been administering the Debtors' chapter 11 cases for nearly one year since my appointment as trustee of their estates. During that time, I and my counsel have conducted a tremendous amount of diligence regarding the Debtors' various direct and indirect property interest and the various claims that they and the entities they own and control are subject to. For the reasons stated herein and the Motion, I believe that the settlement with Howard Abselet ("**Howard**") and Israel Abselet ("**Israel**" and together with Howard, the "**Abselets**") represents the most efficient and best way to maximize value for the benefit of all parties in interest in the Debtors' bankruptcy cases.

**A.**    **The Claims of Howard and Israel Abselet**

4.    Upon information and belief, in 2008 and 2009, the Debtors borrowed money from Howard in the approximate amount of $6,000,000 ("**Howard's Loan**"). After the Debtors failed to repay Howard's Loan, Howard commenced that action entitled *Howard L. Abselet v. Alliance Lending Group, Inc. et al.*, Case No. 2:11-cv-00815-JFW(JEMx) in the ("**California District Court**") United States District Court for the Central District of California ("**Howard's Collection Action**"). On or about August 10, 2012, Howard obtained a judgment (the "**Judgment**") in Howard's Collection Action against, among others, the Debtors.

Upon information and belief, Howard obtained or pursued the following to enforce the Judgment:

-     An abstract of judgment against Massoud's residence at 910 North Rexford Drive, Beverly Hills, California 90210 (the "**Rexford Property**") and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Solyman's then residence at 580 Chalette Drive, Beverly Hills, California 90210 (the "**Chalette Property**," and together with the Rexford Property, the "**Residences**").

- A charging lien against the Debtors' interests in Encino Corporate Plaza, L.P. ("**ECPLP**"), which interests constitute 100% of the interests in ECPLP.

- A charging lien issued by the United States District Court for the District of Nevada against the Debtors' interest in various entities.

- On January 29, 2015, Howard levied on all of the Debtors' stock (the "**RLI Stock**") in Roosevelt Lofts, Inc. ("**RLI**"), all of the Debtors' stock (the "**ECPB Stock**") in ECP Building, Inc. ("**ECP Building**"), and all of the Debtors' stock (the "**APII Stock**," and collectively with the RLI Stock and the ECPB Stock, the "**Stock**") in Alliance Property Investments, Inc. ("**APII**"); and on April 29, 2015, Abselet was the successful bidder at the execution sales of all of the Stock (the "**Execution Sale**").

- As set forth in the Agreement, Howard also commenced other actions for the purpose of enforcing the Judgment.

5.      Upon information and belief, Howard asserts that the balance owed on the Judgment as of the Petition Date is approximately $10,646,470, and continues to accrue interest, associated fees, and costs.

6.      Upon information and belief, in 2001, Sina Abselet ("**Sina**"), Howard's father, lent the Debtors and their companies, including S&R Equities ("**S&R**") and Madison Equities ("**Madison**") $2,000,000 (the "**$2M Loan**"), which Israel Abselet ("**Israel**" and together with Howard, the "**Abselets**"), Howard's brother, asserts the $2M Loan was assigned to him by Sina. The $2M Loan was secured by deeds of trust against the Residences (as defined below). The principal balance of the $2M Loan was subsequently reduced by $250,000 but continued to accrue interest and default interest for a number of years. As of May 31, 2017, Israel asserts that the outstanding amount on the $2M Loan is approximately $3,892,531, and continues to accrue interest, fees, and costs.

**B.      The Oklahoma Action and Receivership and APII Stock**

7.      Howard contends that he owns Alliance Property Investments, Inc. ("APII").  APII has a claim to approximately $19 million of proceeds (the "**FNC Proceeds**") derived from a receiver's sale of the First National Center building in Oklahoma City, Oklahoma (the "**First National Center**").  The receiver's sale and disputes relating to ownership of the FNC Proceeds have been, and are being, overseen by the United States District Court, Western District of

Oklahoma (the "**Oklahoma District Court**").  There are a number of material claims to the FNC

Proceeds, including the following.

    a.    One or more entities purportedly controlled by the Neman family and related

companies (collectively, the "**Nemans**") contend that they bought  the First

National Center, owned it outright at the time of the receiver's sale, and are

entitled to all of the net proceeds.  Howard, and the Barlava family and its

companies (collectively, the "**Barlavas**"), contend that the Nemans are merely

equitable mortgagees of the First National Center and, at most, are entitled to

recover approximately $7 million of the FNC Proceeds.

    b.    While it is undisputed that one or more of the Barlavas owned interests equivalent

to 50% of the First National Center during or prior to the summer of 2012,

Howard contends that the Barlavas sold their interests in the First National Center

to the Debtors or their affiliates for $2 million before the Nemans made the

equitable mortgage, and Howard is entitled to all of the FNC Proceeds through his

ownership of APII.  The Barlavas contend that they owned interests equivalent to

50% of the First National Center at the time of receiver's sale, their ownership

was not subject to the lien of the Nemans' equitable mortgage, and they are

entitled to half of the FNC Proceeds and "equalizing distributions" due to alleged

unequal "distributions" to the Debtors.  Whether the Barlavas were paid a portion

of their sale price ($1.35 million of $2 million) for their interests in the First

National Center also is at issue.

    c.    APII's interest in the FNC Proceeds is worth anywhere between $0 (*i.e.*, if the

Nemans owned the property outright on the date of the receiver's sale) and

approximately $11 million (if APII is entitled to all of the FNC Proceeds, after

paying off the Nemans' equitable mortgage).

    8.    Upon information and belief, in January of 2015, pursuant to the Judgment, Howard

purported to levy on the APII Stock and, at an ensuing execution sale, purported to purchase the

stock for $20 (the "**APII Execution Sale**").  Subsequently, in Howard's Collection Action, the

DOCS_SF:94246.3 32274/001

Debtors challenged the APII Execution Sale, claiming, *inter alia*, that the APII Stock was certificated and that Howard had not properly levied on the APII Stock by causing the levying officer to take possession of the certificates representing the APII Stock. By order entered in January of 2016, the District Court denied the Debtors' motion to set aside the APII Execution Sale. The Trustee contends that the District Court found that the Debtors were estopped from asserting that the APII Stock is certificated; Howard contends that no one, including me, may contest Howard's acquisition of the APII Stock at the APII Execution Sale. While the Debtors appealed the District Court decision, I determined not to pursue the appeal.

9.      Instead, I commenced an adversary proceeding, Case No. 1:17-ap-01027 (the "**APII/RLI Stock Action**") contending that the APII Stock was, at the relevant time, certificated, that the levy and execution sale of the stock were invalid for failure to take possession of the certificates and contending that, pursuant to the "strong arm powers" granted to the Trustee pursuant to Bankruptcy Code § 544(a), the Trustee was not estopped from arguing that the APII Stock was certificated. I contended that even if the certificates relied upon by the Debtors for the California District Court were in fact fabricated after the APII Execution Sale, there were in fact preexisting certificates representing the APII Stock issued in 2001.

10.      Howard filed a motion with the California District Court seeking an order withdrawing the reference of this adversary proceeding. I opposed the motion but, by minute order entered June 1, 2017, the California District Court granted the motion. In doing so, the California District Court indicated that, in its opinion, it had already adjudicated the issues raised in the complaint, an indication that it might ultimately grant Howard's motion to dismiss the complaint.

11.      Absent the Settlement, if Howard ultimately prevails on the issue of the validity of the APII Execution Sale in the adversary proceeding, the FNC Proceeds he receives (which, as discussed above, could be substantial) will not be credited against the Judgment. Under the Settlement, a portion of the FNC Proceeds will paid to the Estates after the Minimum Threshold is satisfied, and all FNC Proceeds will be paid to the Estates after the Abselets' claims are satisfied.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**C.    Roosevelt Loft Funds**

12.    As this Court is aware, a custodian is currently holding approximately $1.5 million of funds which, under the confirmed plan of reorganization of Roosevelt Lofts, LLC ("**RLL**"), are payable to Roosevelt Lofts, Inc. ("**RLI**"), the sole member of RLL.  It appears from filings with the California Secretary of State that Massoud and Solyman are the sole officers and directors of RLI.  However, the ownership control of RLI is disputed.

13.    Howard claims to be the holder of at least approximately 46% of the RLI Stock by virtue of a purported levy on all the Debtors' interests in RLI.  It is undisputed that the Barlavas owned approximately 46% of the RLI Stock at one time.  In proceedings pending before the California District Court, Howard asserts that the Barlavas sold their stock in RLI to the Debtors in 2012 and that his levy on the Debtors' interests in RLI also extended to the 46% interest formerly owned by the Barlavas.  I commenced an investigation into the Barlavas' ownership interests in RLI; documents reviewed by me, my counsel, or advisors indicate that the Barlavas likely sold their interests in RLI to the Debtors in August of 2012.  Further, it appears from my and my counsel's investigation that prior to that sale, the Barlavas may have received a disproportionately large share of dividends made by RLI to its shareholders (and therefore may owe funds to the other shareholders as a result).  The only others asserting ownership of stock in RLI are Hamid Joseph Nourmand and/or his wife (collectively, "**Nourmand**").  At this time, I do not believe there are any reasons to challenge Nourmand's interest in RLI, but Howard believes that Nourmand (the Abselets' cousin) may have sold his interest in RLI to the Debtors, and is pursuing that claim.  As more fully set forth below and the Motion, and upon the advice of counsel, I believe that Howard's levy and the execution sale of the RLI stock can be set aside pursuant to Bankruptcy Code § 544(a)(1), (2) and applicable state law for the same reasons as the APII Stock.

**D.    APII Stock and RLI Stock Adversary Proceeding**

14.    My initial efforts to resolve the disputed issues relating to the APII Stock and the RLI Stock with Howard were not successful. As referenced above, on March 24, 2017, I commenced the APII/RLI Stock Action to determine the Debtors' Estates' interest in the Stock.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

15.    In response, Howard filed a motion with the California District Court to withdraw the reference of the APII/RLI Stock Action. I filed an objection and Abselet filed a response. In short, Howard contends that the Trustee's filing of the APII/RLI Stock Action is an attempt to circumvent the California District Court's limited rulings that relate to the Stock. Upon the advice of counsel, I commenced the APII/RLI Stock Action because I believe that, as a chapter 11 trustee of the Debtors' estates, I have independent claims to the Stock that are not subject to the California District Court's rulings nor am I estopped by the Debtors' prepetition conduct that caused the California District Court to issue its limited estoppel rulings regarding the Debtors and the Stock. In addition, Howard also filed with this Court a motion to dismiss the APII/RLI Stock Action.

**E.    Rexford Property and Chalette Property Action**

16.    Upon information and belief, prior to the Petition Date, Massoud and his spouse owned and he and his family resided at the Rexford Property, a Beverly Hills residence worth approximately $14 million. Also, Solyman and his spouse owned and he and his family resided at the Chalette Property, a Beverly Hills residence worth approximately $8 million to $9 million on the Petition Date. The Rexford Property and Chalette Property were encumbered by certain deeds of trust that secured certain debts of the Debtors.

17.    Around January 2015, Massoud's brother-in-law, Jack Nourafshan, through an entity he controls, purchased a promissory note that was secured by two separate deeds of trust against the Rexford Property and Chalette Property. Subsequently, Nourafshan, through other companies he controls acted to foreclose on the Rexford Property and Chalette Property. Nourafshan immediately rented the Rexford Property to Massoud under a two year lease at a rate of $25,000 per month. Nourafshan quickly sold the Chalette Property for a substantial profit (an approximate 90% return on an annualized basis in less than a couple of months). Massoud has never paid any rent, the lease has since expired by its terms, yet Massoud and his family continue to enjoy the comforts of the Rexford Property.

18.    On April 25, 2017, I commenced an adversary proceedings against Elkwood Associates, LLC and Fieldbrook, Inc., 1:17-ap-01040 (the "**Rexford/Chalette Action**"), which was amended on May 11, 2017. By the Rexford/Chalette Action, the Trustee seeks to (a) quiet title of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Rexford Property, (b) set aside the foreclosure sale of the Rexford Property, and (c) avoid the foreclosures of the Rexford Property and Chalette Property as actual and/or constructive fraudulent conveyances, in addition to other related relief.

19.     As set forth in greater detail in the complaint, I allege, among other things that (a) the foreclosure of the Rexford Property was void because the foreclosing party did not own the debt or security instruments relating to the Rexford Property, (b) irregularities in the foreclosure process requires setting aside the foreclosures, (c) the foreclosures were actually and constructively fraudulent due to the irregularities, lack of equivalent value, Massoud and Mr. Nourafshan (who controls the defendants) had a secret agreement and understanding as to how the Rexford Property and the Chalette Property, or their value, would be diverted from the Debtors' creditors to the benefit of the Mr. Nourafshan's family and/or Massoud, and to the detriment of those creditors, in addition to other reasons. I believe that part of this secret agreement and understanding would be that Massoud and his family would be permitted to live in the Rexford Property, rent free, for an indeterminate period of time but that the Chalette Home would be delivered vacant so that Mr. Nourafshan and his family could make a quick, and sizeable profit and return on their investment, which they did.

**F.     Sky Las Vegas Sale Proceeds and JCBL Trust**

20.     Upon information and belief, prior to the entry of order of relief of the Debtors' cases, Nevada Investment Properties, LP ("**NIP**"), the owner of certain real property known as "Sky Las Vegas," located at 2700 Las Vegas Boulevard South, Las Vegas, Nevada (the "**Las Vegas Property**"), was in the process of selling the Las Vegas Property. During the pendency of these cases, the Las Vegas Property was in escrow to be sold by NIP to TAG Fund II, LLC, a Nevada limited liability company ("**TAG**"), or assignee, for a purchase price of $5.1 million.

21.     As set forth in the governing documents, on or about January 11, 2000, Parinaz Yashouafar ("**Parinaz**"), Massoud's spouse, settled a trust by way of a Declaration of Trust (the "**JCBL Trust**"). One of the Trust Assets was and is a 20% ownership interest in Milbank Capital I ("**Milbank Capital**"), which in turn holds a 50.5% interest in NIP. JCBL Trust's share of the proceeds from the sale of the Las Vegas Property totaled approximately $479,500 (the "**JCBL**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Proceeds**"). Pursuant to that certain stipulation (the "**Stipulation**") [Docket. No. 200], entered into by and between, inter alia, the Trustee and the JCBL Trust and approved by order entered on November 15, 2016 [Docket. No. 243], the JCBL Proceeds are being held in an account at Pacific Western Bank, in the name of JCBL Trust, but may not be distributed pending resolution of the Debtors' Estates' interest in such funds or until further order of this Court.

22.      In addition, S&R and Madison (which are among the entities subject to Howard's Nevada charging lien) each hold: (1) a direct 4.35% limited partnership interest in NIP; and (2) a 4.545% limited partnership interest in NIP through Milbank Capital I; for an aggregate holding of 17.79%. S&R and Madison are owned by the Debtors. After the closing of the Las Vegas Property's sale, the Trustee received approximately $645,000 on account of S&R's and Madison's interest in NIP (the "**S&R and Madison Proceeds**").

**G.      The JCBL Trust Action**

23.      As set forth in the governing documents, the JCBL Trust was a fully revocable trust at the time it was created by Parinaz. On or about January 2, 2015, Parinaz amended the JCBL Trust (the "**First Amendment**"). By the execution of the First Amendment, Parinaz caused the JCBL Trust to be irrevocable.

24.      On or about May 12, 2017, I commenced an adversary proceeding in this Court to determine the following: (a) setting aside the First Amendment and the related transfer as an actual or constructive fraudulent transfer; (b) declaring that the right to revoke the JCBL Trust is property of Massoud's Estate; (c) declaring that, upon exercise of the revocation of the JCBL Trust by the Trustee, the assets of the JCBL Trust (including, without limitation, the JCBL Proceeds) are, and will become property of Massoud's Estate; and (d) and other related relief.

**H.      The Settlement**

25.      After an effort to mediate the claims subject to the Settlement and extensive negotiations, I have reached a compromise that is memorialized in the Agreement attached hereto as **Exhibit 1**.  The salient terms of the Settlement include the following:

DOCS_SF:94246.3 32274/001

26.     The following is a brief summary of the terms and conditions of the Agreement, qualified in its entirety by the actual provisions of the Agreement itself.

27.     I will release any and all claims that the Estates have, or may have, in and to the RLI Stock, the APII Stock, any and all rights and remedies relating to either of them, and the proceeds thereof (the "**Abselet Shared Assets**").  In exchange, the Estates will receive a portion of the net recoveries from the Abselet Shared Assets, as set forth below.

28.     The Abselets will control the liquidation of the Abselet Shared Assets, subject to consultation with me and my counsel. If the Abselets elect not to pursue the Abselet Shared Assets, I may liquidate them as assets of the Estates.

29.     I will control the prosecution and liquidation of assets of the Estates, which expressly include any and all claims and actions that arise out of the foreclosures on the Residences. The Abselets retain their independent rights to set aside the foreclosures of the Residence but any and all net recoveries are subject to the sharing provisions of the Agreement.

30.     As the Estates have no equity in S&R and Madison, the Estates' equity interests in those assets are to be transferred to Israel on account of the $2M Loan. The Abselets will be charged with liquidating, winding up and dissolving Madison and S&R in accordance with applicable law.

31.     It is anticipated that Israel, as a creditor or equity holder, will receive certain monies from the liquidation of Madison and S&R by virtue of the $2M Loan.  It is also anticipated that Howard may receive some recoveries from the liquidation of ECPLP.  Any and all net recoveries received from the foregoing sources are credited against the Minimum Threshold (*i.e.*, the first $5 Million (irrespective of when received by Howard and Israel) and toward the payment of the Abselets' claims in excess of $5 million. These recoveries do not, however, have to be shared with the Estates.

32.     Funds received from the liquidation of the Abselet Shared Assets (and any pursuit of claims by the Abselets relating to the foreclosure of the Residences), the assets of the Abselets that are credited to their claims, and the assets of the Estates (except the Estates' share of net proceeds generated from the Abselet Shared Assets, which shall be retained by the Estates and not further shared with the Abselets), shall be shared and distributed by and between the Abselets and the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

Estates as follows: (a) first, *pari passu*, to reimburse the "Post-May 31 Fees" (*i.e.*, the reasonable fees and costs incurred by the Abselets in collecting and liquidating the Abselet Shared Assets from and after May 31, 2017) and the Post-Order Fees (*i.e.*, fees and expenses incurred by the Trustee (subject to ultimate allowance by the Bankruptcy Court) incurred in collecting and liquidating assets of the Estates (including, without limitation, any and all claims and actions arising out of the foreclosure of the Residences) from and after May 31, 2017; (b) second, to the Abselets until they have received the Minimum Threshold (*i.e.*, the first $5 million against their claims, which is $5 million of net proceeds received either from the Abselet Shared Assets (including any pursuit by the Abselets of claims relating to the foreclosure of the Residences), the Estates or the Abselet Credited Assets); (c) thereafter, until the Abselets' claims are paid in full: (i) two-thirds to the Abselets; and (ii) one-third to the Trustee for the benefit of the Estates.

33.     Pursuant to any order (the "**Approval Order**") approving the Agreement: (a) Howard's claim will be allowed in the amount of approximately $11.8 million as of May 31, 2017, plus additional accruals and accretions, as more fully set forth therein and (b) Israel's Claim is allowed in the approximate amount of $3.89 million as of May 31, 2017, plus additional accruals and accretions as more fully set forth therein.

34.     Pursuant to paragraphs 4 and 5 of the Approval Order, the Trustee validates certain liens held or asserted by the Abselets in and to various assets of the Estates and, pursuant to paragraph 6 of the Approval Order, confirms Howard's ownership of the ECP Building, the APII Stock and the RLI Stock (subject to all of Howard's obligations under the Agreement).

35.     Subject to all of the terms and conditions of the Agreement, the parties thereto enter into mutual general releases.  The Abselets' recourse to the Estates and their assets is limited to those specific recoveries provided for under the Agreement.

36.     The Settlement, if approved, will resolve the disputed claims between the Estates and the Abselets. Plus, the Settlement provides the most efficient means to help ensure that the Estates receive cash that can be used to satisfy the various claims against the Estates.

37.     I believe that the Settlement's beneficial terms and satisfaction of the prevailing legal standard merit approval of the Agreement accordingly. Absent the Settlement, I would have to

DOCS_SF:94246.3 32274/001

litigate the Estates' various claims, incur additional administrative expenses, without having any certainty about recovering property that can be distributed to the holders of allowed claims.

38.    While I believe I have a reasonable likelihood of success in litigating the matters discussed herein and the Motion, I recognize that I may not necessarily prevail, and the legal and accounting expenses to be incurred in such litigation could well be substantial. Thus, I support the Settlement as a result of the uncertain chances of success in litigating this matter.

39.    I declare under penalty of perjury that the foregoing is true and correct and this declaration was executed this 31st day of July, 2017 at Calabasas, California.


_____

David K. Gottlieb, Solely in his Capacity as Ch. 11 Trustee of the Jointly Administered Estates of Solyman Yashouafar and Massoud Aaron Yashouafar

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **EXHIBIT 1**

**(Agreement)**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This Settlement Agreement and Mutual Releases (this "**Agreement**") is made and entered into as of the Effective Date.

## SECTION I.
## DEFINED TERMS AND PARTIES

A.      Capitalized terms and other phrases used in this Agreement shall have the respective meanings ascribed to them in the schedule of definitions attached as **Exhibit I** to this Agreement.

B.      The Parties to this Agreement are (1) the Trustee; (2) Howard; and (3) Israel.

## SECTION II.
## RECITALS

A.      In 2008 and 2009, Howard made Howard's Loan to the Debtors, among others.

B.      In 2011, to enforce his rights with respect to Howard's Loan, Howard commenced Howard's Collection Action.

C.      On or about February 10, 2012, Howard and the Debtors, among others, entered into a settlement agreement pursuant to which, among other things, the Debtors gave Howard a security interest in certain assets and issued the Irrevocable Instructions.

D.      On or about August 10, 2012, Howard obtained the Judgment in Howard's Collection Action.

E.      To enforce the Judgment, Howard (1) recorded the Abstract of Judgment in the County of Los Angeles, State of California, on or about August 29, 2012, and (2) filed the JLPP with the California Secretary of State on or about September 19, 2012.  The Abstract of Judgment created a lien in favor of Howard on, among other things, the Debtors' Residences. The JLPP created a lien in favor of Howard on certain of the Debtors' personal property.

F.      In further enforcement of the Judgment, Howard obtained the California Charging Liens on the Debtors' respective ECPLP Interests, which interests together constitute one hundred percent (100%) of the ownership of ECPLP.  At the time the California District Court entered that Charging Order, ECPLP owned the Encino Corporate Plaza.

G.      In further enforcement of the Judgment, Howard moved in Howard's Collection Action for the appointment of a receiver over the ECPLP Interests. The California District Court appointed a receiver, who initially operated, and then sold, the Encino Corporate Plaza.

H.    On or about November 21, 2016, after obtaining authorization from the Bankruptcy Court, the Trustee abandoned the Estates' interests in the ECPLP Interests, the ECPB Stock, and the Encino Corporate Plaza.

I.    Howard contends that (1) on January 29, 2015, he levied on the Stock, (2) he was the successful bidder for all of the Stock at the execution sale by the U.S. Marshal of such Stock on April 29, 2015, and (3) he is now, and has been since the execution sale, the owner of all of the Stock.

J.    The Trustee contends that the levies on, and the execution sale of, the Stock were ineffective to transfer the Stock to Howard, that the levies and the execution sale were void and/or voidable, and that the Trustee may avoid any transfer of the Stock to Howard and recover the Stock for the benefit of the Estates.  Howard disputes the Trustee's contentions.  The Trustee commenced the Avoidance Action to avoid any transfer of the RLI Stock and the APII Stock to Howard, and to recover such Stock for the benefit of the Estates.

K.    In further enforcement of the Judgment, on August 27, 2014, Howard commenced the FNC Action, asserting claims, among others, arising from alleged transfers of Debtors' indirect interests in the First National Center.  In the FNC Action, the Oklahoma District Court appointed a receiver who operated and sold the First National Center. The Oklahoma District Court is holding the FNC Proceeds in its registry pending resolution of the claims in the FNC Action.

L.    In further enforcement of the Judgment, on or about July 8, 2015, Howard commenced the APII FT Action with respect to claims arising from the Debtors' alleged transfers of the APII Stock to Solyman's daughter.  The APII FT Action currently is pending, but stayed due to the Bankruptcies.

M.    In further enforcement of the Judgment, on or September 28, 2015, Howard commenced the ECP FT Action with respect to claims arising from the Debtors' alleged transfers of the ECPB Stock and the ECPLP Interests to their children and affiliates. The ECP FT Action currently is pending, but stayed due to the Bankruptcies.

N.    In further enforcement of the Judgment, Howard (1) on or about July 11, 2014, registered the Judgment in the Nevada District Court, and (2) obtained the Nevada Charging Order, pursuant to which he has the Nevada Charging Liens on the Debtors' interests in various limited liability companies, limited partnerships, and corporations.

O.    In further enforcement of the Judgment, on August 22, 2016, Howard commenced the Levene Neale Action for claims arising out of the distributions from the Reserve Accounts.

P.    Howard asserts that Judgment (1) has a balance as of May 31, 2017 $11,811,276.20, (2) continues to accrue interest at the rate of 6% per annum, (3) entitles him to recover his attorney's fees and costs, and (4) is secured by certain property of the

Debtors.  The Trustee disputes Howard's accounting, his entitlement to postpetition interest, attorney's fees, and costs, and the scope of the collateral securing the Judgment.

Q.     Israel asserts that (1) Sina made the $2M Loan to the Debtors and their companies, including S&R, Madison, and other Debtor-owned/controlled companies; (2) the current principal balance of the $2M Loan is $1,750,000.00; (3) the $2M Loan accrues interest at the non-default rate of 12% per annum and a default rate of 14% per annum, is subject to a 5% late payment fee, and the prevailing party is entitled to recover attorney's fees and costs; (4) the $2M Loan was secured by the $2M DOTs (and remains secured by the $2M DOTs to the extent that the Foreclosures are void); (5) the obligors on the $2M Loan defaulted; (6) S&R and Madison made payments on the $2M Loan as recently as March 2016; (7) the balance on the $2M Loan is not less than $3,892,531.13 as of May 31, 2017; and (8) Sina assigned to Israel the $2M Loan and all rights associated with the $2M Loan.  The Trustee disputes Israel's assertions regarding the $2M Loan.

R.     To enforce his rights with respect to the $2M Loan, Israel commenced the $2M Loan Action, which is currently pending.

S.     In January and February of 2015, after purchasing debt that was secured by deeds of trust of the Residences, certain parties conducted the non-judicial Foreclosures upon the Residences. The Parties dispute the validity and effectiveness of such Foreclosures, and the Trustee has commenced an action seeking to quiet title and set aside the foreclosure of the Rexford Property and avoid the transfers of the Residences as actual and constructive fraudulent conveyances.

T.     The Parties wish to settle the disputes and controversies between and among them regarding the Abselets' claims against the Debtors (and the Estates) and the ownership of and/or priority of interests in  various assets, claims, and other property to avoid the costs, the burdens, and the uncertainties of litigation. In consideration of the promises contained in this Agreement, the receipt and sufficiency of which the Parties acknowledge, the Parties agree as follows.

**SECTION III.
THE 9019 MOTION**

Within seven (7) days of the Abselets' execution of the Agreement, the Trustee shall file a motion pursuant to Bankruptcy Rule 9019 seeking entry of the Approval Order.  The Parties shall take all reasonable steps to obtain entry of the Approval Order and shall take no steps to cause the Bankruptcy Court to enter an order denying the motion or not enter the Approval Order in the form attached as **Exhibit III**.  If (1) the Bankruptcy Court does not enter the Approval Order in the form attached as **Exhibit III** (or such other form to the Parties, and each of them, in their absolute discretion agree) on or before September 15, 2017, or (2) any Party has disposed of any Estate Property or Abselet Property after the filing of the Bankruptcies and prior to the Effective Date, any Party may elect to declare this Agreement null and void by giving the other Parties written notice of such election.

## SECTION IV.
## CLAIM ALLOWANCE AND LIENS

A.    Allowance of Howard's Claim

As of the Effective Date, Howard's Claim shall equal the sum of the following:

- $11,811,276.20 as of May 31, 2017, plus

- Howard's Post-May 31 Fees; plus

- Interest on the foregoing at the rate of 6% per annum.

Howard's Claim will not be subject to reduction in allowed amount, subordination, disallowance, surcharge, or any defense or counterclaim, including without limitation setoff, recoupment, or attachment by any other party. Howard's Claim shall be paid only as provided in this Agreement and from third parties (including the Debtors) and property that is not Estate Property.

B.    Allowance of Israel's Claim

As of the Effective Date, Israel's Claim shall equal the sum of the following:

- $3,892,531.13 as of May 31, 2017, plus

- Israel's Post-May 31 Fees; plus

- Interest on the foregoing at the rate of 14 per annum.

Israel's Claim will not be subject to reduction in allowed amount, subordination, disallowance, surcharge, or any defense or counterclaim, including without limitation setoff, recoupment, or attachment by any other party.  Israel's Claim shall be paid only as provided in this Agreement and from third parties (including the Debtors) and property that is not property of the Estates.

C.    Collateral Securing Howard's Claim

As of the Effective Date, Howard's Claim is secured by the following liens, which are valid, enforceable, and duly perfected (without further action, although the Trustee shall execute such documents that Howard may reasonably request to perfect or give notice of such liens):

- The lien under the Abstract of Judgment on (1) the Residences, if and to the extent that the Foreclosures are avoided, declared void, or otherwise nullified, whether voluntarily or at the request of the Trustee, the Abselets, or any other person or entity and (2) the proceeds of any claim, whether or not the subject of a lawsuit, to avoid, set aside, declare void, or otherwise

nullify, or to recover damages for, those Foreclosures, or to recover the proceeds arising from the disposition or Foreclosure of the Residences, with the same priority as the lien on the Residences under the Abstract of Judgment before the Foreclosures;

- The lien under the Abstract of Judgment on any other interests of the Debtors (or their trusts, including the JCBL Trust), however and whenever such interests may arise, in real property in the County of Los Angeles, State of California;

- The lien under the JLPP on those types of assets listed in California Code of Civil Procedure section 697.530(a) of the Debtors and any trust in which the Debtors, or either of them, are a trustor/settlor or beneficiary, including the JCBL Trust;

- The lien on the assets listed in the financing statements by the Debtors in favor of Howard, which lists are attached collectively as **Exhibit IV** to this Agreement; and

- The Charging Liens.

D.    <u>Collateral Securing Israel's Claim</u>

As of the Effective Date, Israel's Claim is secured by the following liens, which are valid, enforceable, and duly perfected (without further action, although the Trustee shall execute such documents that Israel may reasonably request to perfect or give notice of such liens):

- the Residences, if and to the extent that the Foreclosures are avoided, declared void, or otherwise nullified, whether voluntarily or at the request of the Trustee, the Abselets, or any other person or entity; and

- the proceeds of any claim, whether or not the subject of a lawsuit, to avoid, set aside, declare void, or otherwise nullify, or to recover damages for, those Foreclosures, or to recover the proceeds arising from the disposition or Foreclosure of the Residences

with the same priority as the liens on the Residences under the $2M DOTs before the Foreclosures.

**SECTION V.**
**<u>ASSIGNMENTS</u>**

A.    On the Effective Date, all of the Estates' interest(s) in and to the following are assigned to Howard:

(1)    the RLI Property, the APII Property, the ECPB Stock, and the Irrevocable Instructions Proceeds;

(2)    the FNC Proceeds; and all other rights and claims related in any way to the FNC Proceeds, the First National Center, and the entities and persons, who, directly and indirectly, owned or own an interest in the First National Center or the FNC Proceeds; and

(3)    claims in the APII FT Action, the RLI FT Action, and the FNC Action, and all rights and claims related in any way to each of them.

The above-described assignments shall be effective as of the Effective Date, without the necessity of additional documentation from, or action by, the Trustee; *provided, however*, the Trustee shall execute such documents that the Abselets may reasonably request from time to time to confirm or further document the effectuation of such assignments. The Trustee shall not take any action by which the Trustee asserts, or supports anyone else in asserting, that Howard owns less than all of the outstanding stock in APII, ECPB, and RLI. Further, if the Trustee ever has an interest in anything that the Trustee would have been obligated to assign to Howard under the above-described assignments if the Trustee had an interest in same as of the Effective Date, the Trustee shall promptly notify Howard and assign same to him.

B.    On the Effective Date, all of the Estates' Assigned-Entity Interests are assigned to Israel. Within seven (7) days after the Effective Date, the Trustee shall execute and deliver to Israel the Partnership and Membership Assignment. The Trustee shall not take any action by which the Trustee asserts, or supports anyone else in asserting, that Israel owns less than all of the Assigned-Entity Interests. Further, if the Trustee ever has an interest in anything that the Trustee would have been obligated to assign to Israel under such Assignment if the Trustee had an interest in same as of the Effective Date, the Trustee shall promptly notify Israel and assign same to him.

C.    Within seven (7) days after the later of (1) the Effective Date and (2) the date on which Israel provides the Trustee of the information for the bank account(s) to which Israel wants the Trustee to transfer S&R's and Madison's respective shares of the Sky Las Vegas Proceeds, the Trustee shall transfer such shares of the Sky Las Vegas Proceeds.

**SECTION VI.**
**PURSUIT AND LIQUIDATION OF PROPERTY AND CLAIMS**

A.    Howard has the first right, but not the obligation, to pursue or otherwise liquidate (1) the RLI Property, (2) the APII Property, (3) the Irrevocable Instructions Proceeds, (4) remedies and recoveries under (a) the Charging Liens, (b) the rights and claims assigned to him under this Agreement**,** and (c) Howard's Foreclosure Claims, and (5) any and all other rights and remedies that in any way relate or pertain to the foregoing.

B.      Israel has the first right, but not the obligation, to pursue or otherwise liquidate (1) the rights and claims assigned to him by Section V.B above, and (2) Israel's Foreclosure Claims.

C.      Notwithstanding anything to the contrary in this Agreement, Howard's rights regarding, and receipts from, the California Charging Order and the Nevada Charging Order are not Liquidation Proceeds.  The Trustee shall have no right to possess or recover the proceeds arising from the California Charging Order and the Nevada Charging Order; *provided, however*, any recovery that Howard receives from or through the California Charging Order and/or and the Nevada Charging Order shall reduce distributions that the Abselets might otherwise receive from Liquidation Proceeds dollar-for-dollar.

D.      The Trustee may not settle any action regarding the Foreclosures without the Abselets' consent, which consent will not be unreasonably withheld.  The Trustee may settle any and all other claims for relief and causes of action constituting the Estate Property without the consent or approval of the Abselets; *provided, however,* the Abselets shall have the same right to object to any such settlements.

E.      The Abselets, as applicable, may not settle (1) the FNC Action; (2) any action or claim with respect to the APII Stock or the RLI Stock; (3) Howard's Foreclosure Claims and Israel's Foreclosure Claims, without the Trustee's consent, which consent will not be unreasonably withheld.  The Abselets may resolve any other dispute over which they have control or any claims they own, without the Trustee's consent.

F.      The Trustee shall notify the Abselets if and when he decides to designate any Estate Property as Designated Property.  The Abselets shall have thirty (30) days after their receipt of such notice to notify the Trustee to assign such Designated Property, or any part/s of it, to them.  If the Abselets so notify the Trustee, the Trustee will take, at the Abselets' sole expense, such steps as are necessary to assign the Designated Property to the Abselets and/or their designee/s.  If Howard or Israel do not provide timely notice of their election, the Trustee may administer or abandon such Designated Property without regard to the Abselets' rights under this Section.

G.      The Abselets shall notify the Trustee if and when they decide to designate any Abselet Property as Designated Property.  The Trustee shall have thirty (30) days after his receipt of such notice to notify the Abselets to assign such Designated Property, or any part/s of it, to the Estates.  If the Trustee so notifies the Abselets, the Abselets will take, at the Estates' sole expense, such steps as are necessary to assign that Designated Property to the Trustee.  If the Trustee does not provide timely notice of his election, the

Abselets may take such steps as they determine to liquidate or abandon such Designated Property without regard to the Trustee's rights under this Section.

## SECTION VII.
## DISTRIBUTING LIQUIDATION PROCEEDS
## AND CREDIT AGAINST ABSELETS' CLAIMS

A.    The Waterfall

Within thirty (30) days after a Party receives Liquidation Proceeds, the Party receiving such Liquidation Proceeds shall distribute them in the following order:

**First**, to pay the Current Reimbursables of the Parties; *provided*, *however*, that if the Liquidation Proceeds are insufficient to satisfy the full amount of the Current Reimbursables, such Current Reimbursables shall be satisfied *pari passu* based on the respective Current Reimbursables of the Parties; *provided further*, the Trustee shall ultimately be entitled to retain only those Current Reimbursables the Bankruptcy Court allows and any excess shall be applied as prescribed in this Section VII.

**Second**, to pay the Abselets' Claims up to $5,000,000.00, first to Israel's Claim and then to Howard's Claim (and first to attorney's fees and costs, then to principal, and then to interest);

**Third**, to pay the Abselets' Claims (in the same order of application as in the immediately preceding ("**Second**") paragraph) and the Estates by paying two-thirds (2/3) towards the Abselets' Claims and one-third (1/3) toward the Estates; *provided, however*, if after the Abselets have received $5,000,000 under the "**Second**" level of the Waterfall and Howard receives, for example, $100,000 of proceeds from ECPLP, which he is not obligated to share with the Estates, Howard shall retain such proceeds, and of the next $100,000 the Trustee otherwise would have distributed to the Abselets under the Waterfall, the Trustee shall retain the next $66,666.67 (two-thirds of $100,000) of Liquidation Proceeds and pay $33,333.33 (one-third 0f $100,000) to the Abselets; and

**Fourth**, the remainder, if any, to the Estates.

B.    Current Reimbursables may be satisfied with any Liquidation Proceeds, not solely with Liquidation Proceeds obtained by Current Reimbursables.

C.    The distributions or proceeds the Abselets receive: (1) under this Agreement, (2) under the Charging Liens, and (3) from the Assigned-Entities Interests (whether as a creditor or an equity holder) shall serve to reduce the Abselets' rights to further distributions under this Agreement.  Howard reserves his right to argue that the Debtors are not entitled to credit for some or all of the Liquidation Proceeds that the Abselets receives under this Agreement, but such argument by Howard shall not affect the Liquidation Proceeds to which the Abselets are entitled under this Agreement or any other rights or obligations that the Trustee has under this Agreement.

D.     The Parties shall distribute Liquidation Proceeds in accordance with this Agreement whether or not a plan of reorganization or liquidation is confirmed in the Bankruptcies, and whether or not the Bankruptcies (or either of them) are converted to chapter 7 liquidations or are dismissed.

E.     Notwithstanding anything to the contrary in this Agreement, to the extent that the Abselets, or either of them, receive Liquidation Proceeds on account of any claims of any current or former affiliate/s of the Debtors against the Estates (including, without limitation, any claims of RLI, APII and ECPLP), the Abselets shall hold such Liquidation Proceeds in trust for the Estates and shall immediately turn over and account to the Trustee for such Liquidation Proceeds.  The Abselets are only entitled to distributions from the Estates (direct or indirect) as expressly set forth in this Agreement.

F.     All distributions under this Agreement shall be made by wire transfer of same day funds unless the applicable Party has directed the other Party to make the distribution in a different manner.  For clarity, the Parties may distribute only money, and not other types of property, to the other Parties, unless the recipient consents to a non-cash distribution.

G.     The Parties shall not wait until any appeals or motions for reconsideration or new trial have been resolved, or the time to file an appeal or such motions has expired, before they perform under this Agreement, including but not limited to distributing Liquidation Proceeds, and in the case of the Trustee, executing and delivering the Partnership and Membership Interests Assignment.

H.     If the Liquidation Proceeds are less than $10,000, the distributing Party may wait to distribute the Liquidation Proceeds until the aggregate of Liquidated Proceeds held by that Party equals or exceeds $10,000.

## SECTION VIII.
## TRUSTEE'S EXPENSES AND OBLIGATIONS

Other than the Trustee's Post-Order Fees that are satisfied under the "**First**" level of the Waterfall, all administrative expenses in the Bankruptcies and other obligations of the Trustee and the Estates (including but not limited to the Trustee's compensation under Bankruptcy Code section 326(a)) shall be payable solely from Liquidation Proceeds, if any, that the Trustee receives under the **"Third"** and **"Fourth"** levels of the Waterfall. Neither the Abselets, nor either of them, nor their respective rights under this Agreement, shall have liability or obligation for such expenses and obligations, and the Abselets shall not be surcharged for such expenses and obligations.  Without limiting the generality of the immediately preceding sentence, the Abselets' rights to receive distributions of Liquidation Proceeds as prescribed in the Waterfall shall not be reduced by reason of the Trustee's entitlement to compensation and/or the payment of his administrative expenses under the Code.

## SECTION IX.
## JCBL TRUST

The Trustee acknowledges that, to the extent that the Trustee recovers assets of the JCBL Trust, such assets are property of the Estate of Massoud, subject to Howard's liens under the Abstract of Judgment and/or the JLPP, and shall be distributed as Liquidation Proceeds.

## SECTION X.
## DISMISSAL OF AVOIDANCE ACTION

The Trustee shall cause his counsel of record in the Avoidance Action to execute and deliver to Howard a stipulation for dismissal of the Avoidance Action, with prejudice, within ten (10) days of the Effective Date, which Howard then may file immediately.

## SECTION XI.
## EXECUTION OF DOCUMENTS TO PERFECT/CONTINUE PERFECTION OF SECURITY INTERESTS

The Trustee shall execute and deliver promptly such documents that the Abselets may reasonably request to perfect and/or give notice of their liens on Estate Property, as such liens are set forth in this Agreement and/or the Approval Order.

## SECTION XII.
## COOPERATION

A.      The Trustee and the Abselets shall reasonably cooperate with each other in connection with their respective rights and obligations under this Agreement and the Approval Order.  Without limiting the generality of the foregoing:

  (1)      upon request, the Parties shall provide a written accounting, by calendar month, of his receipts of Liquidation Proceeds (and, in the case of Howard, any proceeds arising from the California Charging Order and/or the Nevada Charging Order), and their Current Reimbursables for each month in the accounting, including supporting documentation, by no later than the forty-fifth (45th) day following the last day of the month;

  (2)      if a Party has Liquidation Proceeds to distribute, such Party may request another Party to provide within seven (7) days of receipt of such request, a written interim accounting, including supporting documentation, of the

responding Party's Current Reimbursables through a date not later than
three (3) business days prior to the date specified in the requesting notice;

(3)    the Trustee will take no steps to interfere with the Abselets' pursuit of
Abselet Property; and

(4)    the Abselets will take no steps to interfere with the Trustee's pursuit of
Estate Property (except insofar as the Abselets may pursue the APII FT
Action, the ECPLP FT Action, the RLI FT Action, and Howard's Foreclosure
Claims and Israel's Foreclosure Claims, as provided in this Agreement
and/or the Approval Order).

B.    Notwithstanding any other provision in this Agreement, Howard and Israel shall
retain their rights and interests in and to Howard's Foreclosure Claims and Israel's
Foreclosure Claims, respectively, and the Trustee shall have no right in or to such Claims,
or any part of them, except insofar as the proceeds of Howard's Foreclosure Claims and
Israel's Foreclosure Claims shall constitute Liquidation Proceeds and shall be distributed
as provided in the Waterfall; *provided, however,* the Trustee shall have primary control
over any action in which Howard's Foreclosure Claims and Israel's Foreclosure Claims
and the Estates' Foreclosure Claims are pending, unless and until the Trustee elects not
to pursue the Estates' Foreclosure Claims and/or the Trustee fails to prevail in an action
on the Estates' Foreclosure Claims.

C.    Communications between the Trustee and the Abselets (and their respective
counsel and other professionals, advisors, and experts) with respect to such cooperation
shall be privileged and/or immune as communications made pursuant to a common
interest.

## SECTION XIII.
## MUTUAL RELEASES

A.    <u>Release by the Trustee</u>

Effective as of the Effective Date, the Trustee, solely in his capacity as the chapter 11
trustee of the Estates, fully releases and discharges the Abselets, and each of them, with
respect to any and all claims, actions, causes of action, setoffs, and defenses, of any kind
or nature whatsoever, in law, equity, or otherwise, whether fixed or contingent, whether
now known or unknown, whether suspected or unsuspected, and whether concealed or
hidden, that now exist or that existed on or before the Effective Date.

B.    <u>Release by the Abselets</u>

Effective as of the Effective Date, the Abselets, and each of them, fully release and
discharge the Trustee and the Estates, and each of them, with respect to any and all
claims, actions, causes of action, setoffs, and defenses, of any kind or nature whatsoever,
in law, equity, or otherwise, whether fixed or contingent, whether now known or unknown,

whether suspected or unsuspected, and whether concealed or hidden, that now exist or that existed on or before the Effective Date.

C.    <u>Exclusions from, and Limitation on, Releases</u>

Notwithstanding anything in this Agreement, the foregoing releases in Sections XIII.A and B do not include

(1)    any cause of action, claim, setoff, or defense against any Party for any act, transaction, occurrence, event, error, or omission by such Party arising out of, or relating to the performance, or arising, under this Agreement or the Approval Order, or expressly preserved in this Agreement or the Approval Order,

(2)    Howard's, Israel's, APII's, and/or ECPLP's claims that the debts of the Debtors, or either of them, to the extent any of them are non-dischargeable,

(3)    claims by Howard, Israel, APII, and/or ECPLP against persons and entities other than the Estates, or

(4)    the Abselets' respective rights in collateral for their respective Claims (subject to the terms of this Agreement, including how the Liquidation Proceeds of such collateral will be distributed in accordance with the Waterfall).

D.    <u>Section 1542 Waivers</u>

With respect to the releases in this Section XIII, each Party waives and relinquishes, to the fullest extent that the law permits, the provisions, rights, and benefits of California Civil Code section 1542 and other statutes or common law principles of similar effect.  Each releasing Party acknowledges that he is familiar with, and/or has been advised by his legal counsel of, the provisions of California Civil Code section 1542, which provides as follows:

**[<u>Certain claims not affected by general release.</u>]  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

In connection with such waiver and relinquishment, each releasing Party acknowledges that he is aware that he, or his attorneys, accountants, or agents, may hereafter discover claims or facts in addition to or different from those which he now knows or believes to exist with respect to the subject matter of this Agreement, but that nonetheless, he intends hereby fully, finally, and forever to settle and release all of the matters being released in this Agreement, whether known or unknown, suspected or unsuspected, that now exist, or which may have existed on or before the Effective Date.  In furtherance of the intentions

of each Party, each releasing Party agrees that each of the general releases given in this Agreement shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any additional or different claims or facts or the failure of any consideration or promises between the Parties no matter what they may be for any reason whatsoever.

E.    Covenant Not to Sue

Subject to the other terms and provisions of this Agreement, each Party agrees not to sue any person or entity whom such Party released with respect to any of the claims released in this Section XIII.

## SECTION XIV.
## REPRESENTATIONS AND WARRANTY AS TO THE $2M LOAN

A.    Israel represents and warrants that to the best of his knowledge, Sina assigned to Israel all of his rights and remedies against the Debtors and the Estates with respect to the $2M Loan.

B.    Concurrently with the Abselets' delivery of this Agreement to the Trustee, Israel shall deliver to the Trustee an executed original of Sina's representations regarding the assignment of the $2M Loan to Israel in the form of **Exhibit XIV.B**.

## SECTION XV.
## ADEQUACY OF CONSIDERATION

The consideration recited and expressly provided for in this Agreement is the sole and only consideration for this Agreement, which each Party acknowledges is legally sufficient.

## SECTION XVI.
## NO ADMISSIONS OR CONCESSIONS OF LIABILITY OR FACT

This Agreement effects the settlement of all claims, whether or not asserted, denied, or contested between the Trustee and the Abselets, and the contents of this Agreement shall not be construed as an admission or concession, directly or implied by any Party, of a liability of any kind to another Party or any other person, whether or not the individual or entity is a Party.

## SECTION XVII.
## TAXES

Each Party will bear all taxes, including, but not limited to, customs, excise, luxury, sales, use, value added, and/or income, necessary for such Party to complete such Party's performance of that Party's respective obligations under this Agreement.

## SECTION XVIII.
## NOTICES/CONSENTS

All notices between the Parties required by, or permitted under, this Agreement, and other agreements, instruments and papers pursuant to it, and the consent of any Party required by this Agreement, shall be written, signed by the giving or consenting Party, as the case may be, and shall be sent in hard copy by first class United States mail, or any equivalent or better means of delivery, including, but not limited to, personal delivery or courier delivery services, with all delivery charges prepaid. Such notices and consents shall be deemed given, and agreements, instruments, and papers deemed delivered, served, or received (as appropriate), on the date sent, except as expressly provided in this Agreement. Notices, agreements, instruments, papers, and consents that do not comply with the requirements of this Section shall have no force or effect. The deadline to take any action or give any response to any such notice, agreement, instrument, or paper shall be calculated in accord with applicable law. All such notices, agreements, instruments, and papers shall be sent to the addresses set forth in **Exhibit XVIII.** A Party may change his address, facsimile number, and/or email address by giving written notice of such change to the other Parties in the manner provided in this Section.

## SECTION XIX.
## CHOICE OF LAW

The laws of the State of California, including laws regarding statutes of limitation and/or laches, but not including conflicts of law principles, will govern the interpretation, application, and enforcement of this Agreement except to the extent that the laws of the United States of America preempt the laws of the State of California.

## SECTION XX.
## BANKRUPTCY COURT JURISDICTION

To the extent permitted by law, the Bankruptcy Court shall have exclusive jurisdiction to adjudicate and resolve any and all disputes that arise, or may arise under, or with respect to the terms and conditions of, this Agreement and the Approval Order; *provided, however*, that any motions with respect to the Post-May 31 Fees shall be filed in Howard's Collection Action.

## SECTION XXI.
## ATTORNEYS' FEES AND COSTS

In any future action or proceeding (including but not limited to any appeals), whether judicial or non-judicial, arising out of or related to this Agreement or the Approval Order, regardless of the legal theory on which such action is based, between or among the Parties after the Effective Date, the prevailing Party will recover his reasonable attorneys' fees, expenses, and costs, including expert witness fees and expenses, incurred or paid arising out of, or related to, such future action or proceeding, from the non-prevailing party in such future action or proceeding.

## SECTION XXII.
## ADVICE OF COUNSEL

The Parties represent and warrant that: (1) they have reviewed, or have had the opportunity to review, directly or through an authorized agent, this entire Agreement, including each and every one of its terms, conditions, provisions, and limitations, with independent counsel; (2) they have been fully and completely advised of their rights in connection with entering into this Agreement; and (3) they voluntarily, knowingly, and without duress enters into this Agreement as a complete, final, and binding resolution of the matters that are the subject of this Agreement.

## SECTION XXIII.
## WAIVER, MODIFICATION, AND AMENDMENT

The Parties may not waive any provision of this Agreement except by an express written agreement that expressly identifies the provision/s waived, uses the term "waive" or "waiver" as to such provision/s, states the scope/extent/duration of the waiver, and is signed by all Parties; no Party shall be deemed to waive implicitly any provision/s of this Agreement by any action or writing; a waiver of any provision of this Agreement will not constitute a waiver of any other provision.

## SECTION XXIV.
## TITLES, HEADINGS, AND DEFINED TERMS

The Parties have inserted the Section titles and have used defined terms in this Agreement only as a matter of convenience and for reference.  The Section titles in no way define, limit, extend, or describe the scope of this Agreement or the intent of the Parties in including any particular provision in this Agreement.  Similarly, capitalized defined terms are for convenience and readability.  In the event of a conflict between a capitalized defined term and its definition in **Exhibit I**, the definition in **Exhibit I** shall govern.

## SECTION XXV.
## CONSTRUCTION

This Agreement shall be interpreted in accordance with the fair meaning of its language and to implement the intent of the Parties.  No Party or his attorneys shall be deemed to be the drafter of this Agreement for purposes of interpreting or construing any of its provisions.  Without limiting the foregoing, no statutory or other rule of interpretation shall be used based on the identity, or supposed identity, of the drafter of this Agreement or any provision of it.  In the event of any conflict, this Agreement shall control over the motion seeking approval of this Agreement, and the Approval Order shall control over this Agreement and the motion seeking approval of this Agreement.

## SECTION XXVI.
## BINDING ON THE TRUSTEE'S SUCCESSORS AND PARTIES IN INTEREST AND IN THE EVENT OF CONVERSION

In addition to, and not in limitation of, the other Sections and parts of this Agreement: (1) any successor trustee in the Bankruptcies and all parties in interest in the Bankruptcies shall be bound by this Agreement and the Approval Order to the same extent that the Trustee is bound, and (2) this Agreement, the Approval Order, and the rights and the obligations of the Parties under them shall survive the conversion of one or both Bankruptcies, dismissal of the Bankruptcies, or either of them, and may not be modified by a plan of reorganization or liquidation in the Bankruptcies or otherwise, without the Abselets' consent.

## SECTION XXVII.
## NO THIRD-PARTY BENEFICIARIES

Nothing in this Agreement constitutes a contract for the benefit of any third party (including but not limited to the Debtors), any creditor or claimant of any of the Parties, or any non-party in any manner whatsoever.

## SECTION XXVIII.
## ASSIGNMENT/DELEGATION

A.    No Party may assign his obligations under this Agreement without the express written consent of the other Parties.

B.    The Abselets, or either of them, may assign some or all of their rights under this Agreement so long as such rights and related assets remain subject to the obligations with respect to such rights and assets, as set forth in this Agreement and the Approval Order; *provided, however*, that if such assignment is for a purpose other than estate or financial planning, such assignment shall be subject to the consent of the Trustee, which will not be withheld unless the proposed assignment will have a material and adverse effect on the Estates.   Upon such assignment(s), such assignor(s) shall be relieved his/their obligations with respect to such rights and assets under this Agreement and the Approval Order.

C.    By written notice to the Trustee, the Abselets may designate from time to time one or more third parties to receive Liquidation Proceeds or to which the Abselets are entitled from the Trustee under the Waterfall or any property to be assigned to the Abselets under this Agreement.

## SECTION XXIX.
## INTEGRATION

This Agreement and its exhibits, including the Approval Order if and when the Bankruptcy Court enters it, set forth the entire agreement among the Parties.  This Agreement and its exhibits supersede any and all prior or contemporaneous agreements or

understandings, whether written or oral, among the Parties, except as expressly preserved pursuant to the terms of this Agreement. Each Party represents and warrants that he has not been induced into executing this Agreement by any representation or statements of any other Party except as expressly set forth in this Agreement.

## SECTION XXX.
## INCORPORATION OF EXHIBITS BY REFERENCE

The exhibits are part of this Agreement and are incorporated into it as fully as though they were set forth in this Agreement.

## SECTION XXXI.
## FURTHER ASSURANCES

The Parties agree to execute any and all documents or take any reasonable actions, in a timely manner, that are or may be necessary to give full effect to this Agreement and the Approval Order.

## SECTION XXXII.
## EXECUTION

The Parties may execute this Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement. Photographic, electronic, and facsimile copies of such signed counterparts may be used in lieu of the originals for any purpose.

DATED: August 1, 2017 DAVID K. GOTTLIEB, as Chapter 11 trustee of the bankruptcy estates of Massoud Aaron Yashouafar and Solyman Yashouafar

_____
David K. Gottlieb, Trustee

DATED: August 1, 2017 HOWARD L. ABSELET, an individual

_____
Israel Abselet, Attorney-in-Fact

DATED: August 1, 2017 ISRAEL ABSELET, an individual

_____
Israel Abselet

# EXHIBIT I

## SCHEDULE OF DEFINITIONS

As used in the Agreement and the Approval Order, the underlined terms below shall have the meanings indicated.

**$2M Chalette DOT**:  that certain deed of trust by Solyman Yashouafar and Soheila Yashouafar, as trustees of the Solyman and Soheila Yashouafar 2004 Trust, as trustors, in favor of Sina Abselet, as beneficiary, recorded as Document No. 20090615633 of Official Records the Los Angeles County Recorder, on or about April 28, 2009, as amended and assigned from time to time.

**$2M DOTs**:  collectively, the $2M Chalette DOT and the $2M Rexford DOT.

**$2M Rexford DOT**:  that certain deed of trust by Massoud and Parinaz Yashouafar, as trustors, in favor of Sina Abselet, as beneficiary, recorded as Document No. 20090615628, of Official Records the Los Angeles County Recorder, on or about April 28, 2009, as amended and assigned from time to time.

**$2M Loan**:  the loan in the amount of $2,000,000.00 that Sina made to the Debtors and their companies and related rights and remedies.

**$2M Loan Action**:  Israel Abselet v. S&R Equities, L.P. et al., Case No. BC659666 in the Superior Court of the State of California for the County of Los Angeles.

**Abselet Property**:  collectively, (1) Howard's Interests in the RLI Property, the APII Property, the Irrevocable Instructions Proceeds, and (2) Israel's interests in the Assigned-Entities Interests (after the Trustee assigns them to Israel) and any payments on the $2M Loan.

**Abselets**:  Howard and Israel, together (or, where the context requires, individually).

**Abselets' Claims**: collectively, Israel's Claim and Howard's Claim.

**Abstract of Judgment**:  that certain abstract of judgment recorded by Howard in the County of Los Angeles, State of California, on or about August 29, 2012, Document No. 2012-1297244.

**APII:**  Alliance Property Investments, Inc., a California corporation.

**APII FT Action**:  Howard L. Abselet v. Massoud Aaron Yashouafar et al., Case No. 2:15-cv-08570-JFW(JEMx) in the California District Court.

**APII Property**:  all interests and rights in, and claims to (1) the APII Stock and any other direct or indirect interests in the First National Center or any entity with an interest in the First National Center; (2) any and all rights and remedies that in any way relate to such

interests (including, without limitation, the right to recover dividends or distributions improperly or unlawfully paid to persons other than the Debtors); (3) Howard's, APII's, APII's direct and indirect subsidiaries', the Debtors', and the Debtors' affiliates' claims in the FNC Action; (4) the FNC Proceeds; and (5) any and all other rights and remedies that in any way relate or pertain to any of them; whether direct or indirect, real or personal.

**APII Stock**:  all of the outstanding shares of stock in APII.

**Approval Order**:  an order in the form of **Exhibit III.**

**Assigned-Entity Interests**:  all of the Estates' interests, as of the Petition Date, in and to Madison, S&R, MAY, and S.Y., whether direct or indirect, real or personal, known or unknown, contingent or vested, asserted or unasserted, liquidated or unliquidated, together with all rights and claims of every nature whatsoever related in any way to such interests, whether as a creditor or interest holder, but not the obligations arising from such interests.

**Avoidance Action**:  <u>David K. Gottlieb, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar, v. Howard L. Abselet</u>, Case No. 2:17-cv-02473-JFW(JEMx) in the California District Court.

**Bankruptcies**: the bankruptcy cases of (1) <u>In re Solyman Yashouafar</u>, Case No. 1:16-bk-12255-GM, in the Bankruptcy Court, and (2) <u>In re Massoud Aaron Yashouafar</u>, Case No. 1:16-bk-12408-GM, in the Bankruptcy Court.

**Bankruptcy Court**: the United States Bankruptcy Court for the Central District of California.

**California Charging Liens**: the charging liens on the Debtors' ECPLP Interests under the California Charging Order.

**California Charging Order**: collectively, the orders that the California District Court issued in Howard's Collection Action granting Howard a charging lien on all of the ECPLP Interests.

**California District Court**: the United States District Court for the Central District of California.

**Chalette Property**: 580 Chalette Drive, Beverly Hills, California 90210.

**Charging Liens**:  collectively, the California Charging Liens and the Nevada Charging Liens.

**Chase Chalette DOT**: that certain deed of trust by Solyman Yashouafar and his wife, Soheila Yashouafar, as trustees of the Solyman and Soheila Yashouafar 2004 Trust, as trustors, in favor of Chase Manhattan Mortgage Corporation, as beneficiary, recorded as

Document No. 04-0332465, of Official Records the Los Angeles County Recorder, on or about February 13, 2004, as amended and assigned from time to time.

**Chase Rexford DOT**: that certain deed of trust by Massoud and his wife, as trustors, in favor of Chase Manhattan Mortgage Corporation, as beneficiary, recorded as Document No. 04-0112689, on or about January 16, 2004 of Official Records the Los Angeles County Recorder, as amended and assigned from time to time.

**Code:**  Title 11, U.S.C., as amended from time to time.

**Current Reimbursables**:  the Post-Order Fees and the Post-May 31 Fees.

**Debtors**:  Massoud and Solyman, collectively, any one of whom is referred to as a "**Debtor**".

**Designated Property**:  Estate Property or Abselet Property that the Trustee or the Abselets, as applicable, elect not to pursue.

**ECP Building**:  ECP Building, Inc., a California corporation.

**ECP FT Action**: <u>Howard L. Abselet v. Massoud Aaron Yashouafar et al.</u>, Case No. 2:15-cv-07625-JFW(JEMx) in the California District Court.

**ECPB Stock**:  all of the outstanding shares of stock in ECP Building.

**ECPLP**:  Encino Corporate Plaza, L.P., a California limited partnership.

**ECPLP Interests**: the Debtors' respective interests in ECPLP.

**Effective Date**:  the first full court day (1) after the day on which the Bankruptcy Court shall have entered the Approval Order in the form of **Exhibit III** (or such other form of Approval Order to which all Parties, in their absolute discretion, have agreed), and (2) the Approval Order shall not be subject to any stay.

**Encino Corporate Plaza**:  collectively, the office building having the address 16661 Ventura Boulevard, Encino, California 91436, and related personal and real property.

**Estate Property**:  all property of the Estates, or either of them, as provided in 11 U.S.C. § 1115(a), but excluding (1) any property that the Trustee abandons, (2) any property that would be excluded from the Estates if and when the Bankruptcies are converted to cases under chapter 7 of the Code, and (3) any moneys that Trustee receives under the Waterfall.

**Estates**:  the bankruptcy estates of the Bankruptcies, or either of them.

**First National Center**: collectively, the office building in Oklahoma City, Oklahoma commonly known as the First National Center, and related personal and real property.

**FNC Action**: <u>Howard L. Abselet v. Alliance Lending Group, Inc. et al.</u>, Case No. 5:14-fj-00004-F in the Oklahoma District Court.

**FNC Proceeds**:  the proceeds of the operations and the sale of the First National Center by the receiver in the FNC Action.

**Foreclosure Claim**:  all of the subject person's rights to assert and collect or otherwise liquidate, claims to set aside, avoid, or otherwise nullify, or to seek damages due to, the Foreclosures

**Foreclosures**:  the 2015 purported non-judicial foreclosures under the PWB Rexford DOT and the PWB Chalette DOT.

**Howard**: Howard L. Abselet, an individual.

**Howard's Claim**:  the claim (as that term is defined in Section 101(5) of the Code) by Howard in the Bankruptcies, as allowed in the Approval Order.

**Howard's Collection Action**:  <u>Howard L. Abselet v. Alliance Lending Group, Inc. et al.</u>, Case No. 2:11-cv-00815-JFW(JEMx) in the California District Court.

**Howard's Loan**:  The aggregate sum of monies Howard lent to the Debtors and their companies in 2008 and 2009 and related rights and remedies.

**Irrevocable Instructions**: the letter by the Debtors to Levene, Neale, Bender, Yoo & Brill, LLP regarding the disposition of the Reserve Accounts per the terms of the 2012 settlement in Howard's Collection Action with the Debtors and others.

**Irrevocable Instructions Proceeds**: all interests and rights in, and claims to and under, (1) the Irrevocable Instructions; and (2) any and all other rights and remedies that in any way relate or pertain to them; whether direct or indirect, real or personal.

**Israel**:  Israel Abselet, an individual.

**Israel's Claim**:  the claim (as that term is defined in Section 101(5) of the Code) by Israel in the Bankruptcies, as allowed in the Approval Order.

**JCBL Trust**:  a trust created pursuant to that certain Declaration of Trust, dated on or about January 11, 2000 by Parinaz Yashouafar, as amended by that certain First Amendment, dated January 2, 2015.

**JLPP**: that certain judgment lien on personal property filed by Howard with the California Secretary of State on or about September 19, 2012.

**Judgment**:  the Second Amended Judgment dated August 10, 2012 against the Debtors and others, in Howard's Collection Action.

**Levene Neale Action**: <u>Howard L. Abselet, an individual and derivatively on behalf of Roosevelt Lofts, Inc. v. Levene, Neale, Bender, Yoo & Brill, LLP, et al.</u>, Case No. 2:16-cv-06263-JFW(JEMx), in the California District Court.

**Liquidation Proceeds**: all money that a Party receives (except under the Waterfall), from (1) the liquidation of Estate Property or Abselet Property, (2) settlement of a claim that is Estate Property or Abselet Property, and (3) the Abselets' receipt from Howard's Foreclosure Claims and Israel's Foreclosure Claims. (For clarity, S&R's and Madison's respective shares of the Sky Las Vegas Proceeds and distributions by ECPLP to Howard under the California Charging Order and the Nevada Charging Order are not Liquidation Proceeds.)

**Madison**: Madison Equities, L.P., a Nevada limited partnership.

**Massoud**: Massoud Aaron Yashouafar, an individual.

**M.Y.**: MAY-US, LLC, a California limited liability company, formerly known as M.Y., L.L.C.

**Nevada Action**: <u>Howard L. Abselet v. Alliance Lending Group, Inc. et al.</u>, Case No. 2:15-cv-00120-JCM-PAL in the in Nevada District Court**.**

**Nevada Charging Lien**: the liens under the Nevada Charging Order on the Debtors' interests in various limited liability companies, limited partnerships, and corporations.

**Nevada Charging Order**: the charging order that the Nevada District Court issued in the Nevada Action.

**Nevada District Court**: the United States District Court for the District of Nevada.

**Oklahoma District Court:** the United States District Court for the Western District of Oklahoma.

**Parties**: collectively, the Trustee and the Abselets, and each of them, and their respective permitted successors and assigns, and individually, a "**Party**".

**Partnership and Membership Interests Assignment**: the assignment document in the form of **Exhibit V.B.**

**Post-May 31 Fees**: reasonable fees and costs that the Abselets, or either of them, incur, after May 31, 2017, to pursue the Abselet Property and to satisfy the $2M Loan, including but not limited to liquidation/s as contemplated by this Agreement, but excluding (1) the fees and costs that the Abselets, APII, and/or ECPLP incur to pursue non-dischargeablity actions against the Debtors and (2) the fees and costs to which the Abselets may be entitled under Section XXI.

**Post-Order Fees**: the reasonable fees and costs that the Trustee incurs after the Effective Date to collect or otherwise liquidate the Estate Property, but excluding (1) fees

and costs with respect to (a) claim objections for proofs of claims filed in the Bankruptcies; (b) fee applications in the Bankruptcies; and (c) the Estates' share of the Abselet Property; and (2) the fees and costs to which the Trustee may be entitled under Section XXI.

**Residences**: collectively, the Rexford Property and the Chalette Property**.**

**Reserve Accounts**:  collectively, the reserve accounts that were established, or to have been established pursuant to the confirmed plan of reorganization in In re Roosevelt Lofts, LLC, 1:09-bk-14214-GM.

**Rexford Property**: 910 North Rexford Drive, Beverly Hills, California 90210.

**RLI**:  Roosevelt Lofts, Inc., a California corporation.

**RLI Property**: all interests and rights in, and claims to (1) the RLI Stock (including, but not limited to, that which any member or affiliate of the Barlava family claims to own or have any interest in); (2) any and all rights and remedies that in any way relate to the RLI Stock (including, without limitation, the right to recover dividends or distributions improperly or unlawfully paid to persons other than the Debtors); and (3) the Reserve Accounts, (4) any and all other rights and remedies that in any way relate or pertain to any of them; whether direct or indirect, real or personal.

**RLI Stock**:  all of the Debtors' stock in RLI on the date of the levies.

**S&R**:  S & R Equities, L.P., a Nevada limited partnership.

**Sina**:  Sina Abselet, an individual.

**Sky Las Vegas Proceeds:**  S&R's and Madison's respective shares of the moneys that the Trustee holds pursuant to the "Stipulation By and Between: Trustee, Debtors; JCBL Trust; S&R Equities, LP, and Madison Equities, LP Regarding Disposition of Net Proceeds from Sale of Property Commonly Known as Sky Las Vegas" (Dkt. 200 in the Bankruptcies).

**Solyman**: Solyman Yashouafar, an individual.

**Stock**:  collectively, the RLI Stock, the ECPB Stock, and the APII Stock

**Trustee**: David K. Gottlieb, the duly appointed trustee of the bankruptcy estates of Massoud Aaron Yashouafar and Solyman Yashouafar.

**Waterfall:**  The provisions regarding of distributions of Liquidation Proceeds as prescribed by **Section VII.A.**

**Exhibit III**

**FORM OF APPROVAL ORDER**

1   Jeremy V. Richards (CA Bar No. 102300)
    John W. Lucas (CA Bar No. 271038)
2   PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
3   Los Angeles, CA  90067
    Tel: 310/277-6910 / Fax: 310/201-0760
4   E-mail:  jrichards@pszjlaw.com
              jlucas@pszjlaw.com
5
    Attorneys for David K. Gottlieb,
6   Chapter 11 Trustee of the Estates of
    Solyman Yashouafar and Massoud Aaron Yashouafar
7

8                  **UNITED STATES BANKRUPTCY COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SAN FERNANDO VALLEY DIVISION**

11

12  In re:                                 )  Case No. 1:16-bk-12255-GM
                                           )  Jointly Administered with Case
13  SOLYMAN YASHOUAFAR and                 )  No. 1:16-bk-12408-GM
    MASSOUD AARON YASHOUAFAR,              )
14                                         )  Chapter 11
            Debtors.                       )
15  _____       )  **ORDER PURSUANT TO**
                                           )  **RULE 9019(A) OF THE FEDERAL**
16  In re:                                 )  **RULES OF BANKRUPTCY**
                                           )  **PROCEDURE AUTHORIZING AND**
17  SOLYMAN YASHOUAFAR,                    )  **APPROVING SETTLEMENT**
                                           )  **AGREEMENT AMONG DAVID K.**
18          Debtor.                        )  **GOTTLIEB, AS CHAPTER 11**
    _____       )  **TRUSTEE, HOWARD L. ABSELET,**
19                                         )  **AND ISRAEL ABSELET**
    In re:                                 )
20                                         )
    MASSOUD AARON YASHOUAFAR,              )  Date:  August 22, 2017
21                                         )  Time:  10:00 a.m.
            Debtor.                        )  Place:  Courtroom 303
22  _____       )
    Affects:                              )
23                                         )
        Both Debtors.                     )
24  _____       )

25

26

27

28
                                    1
    _____
                ORDER GRANTING MOTION TO APPROVE SETTLEMENT

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

This matter came before the Court on the *Motion for Order Approving Settlement Agreement among David K. Gottlieb as chapter 11 trustee, Howard L. Abselet, and Israel Abselet* [Docket No. __.] (the "**Motion**");[1] having reviewed the Motion, and the matters reflected in the record of the hearing held on the Motion, the Court finds (a) that it has jurisdiction over this Motion; (b) that appropriate and sufficient notice of the Motion has been given; (c) that this is a core proceeding; (d) the Trustee and the Abselets negotiated and entered the Agreement in good faith, and that the terms of the settlement are fair and reasonable; (e) that the relief sought in the Motion is in the best interests of the estates and the creditors; and (f) that the Agreement proposed settlement meets the standards in Rule 9019 of the Federal Rules of Bankruptcy Procedure, and that good and sufficient cause exists for such relief. Accordingly, IT IS HEREBY ORDERED as follows:

1.      The Motion is GRANTED.

2.      The Agreement among the Trustee, Howard L. Abselet, and Israel Abselet is approved.

3.      The Parties are authorized to, and shall, take any and all actions as may be reasonably necessary and appropriate to consummate the Agreement.

4.      Howard's Claim is allowed and secured by liens as set forth in the Agreement.

5.      Israel's Claim is allowed and secured by liens as set forth in the Agreement.

6.      The transfers by which Howard obtained ownership of the Stock are valid and effective, are not avoidable, and may not be avoided.

7.      The Agreement is not an agreement that, and this Order does determine, whether sums that Howard receives from the Liquidation Proceeds shall be deemed to

---

[1] All capitalized terms used but not defined in this Order shall have the meanings given to them in the Agreement attached as Exhibit "1" to this Order.

- 1 -

ORDER GRANTING MOTION TO APPROVE SETTLEMENT

DOCS_SF:94607.2 32274/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

have been received in satisfaction of the Judgment; *provided, however*, whether or not the Debtors are entitled to credit for such sums against the Judgment, proceeds and distributions of Liquidation Proceeds shall be paid towards, and applied to, Howard's Claim and Israel's Claim, as provided in the Agreement.

8.    As of the Effective Date, and retroactive to the Petition Date, Howard, ECP Building, and ECPLP have relief from the automatic stay, any other stay, and any discharge injunction  (A) to operate and/or wind up ECPLP and ECP Building; (B) to enforce the Charging Orders and the Charging Liens, including causing the entities subject to the Charging Liens to make distributions to Howard; and (C) to take any steps that they deem necessary in connection with the receivership estate in Howard's Collection Action.

9.    As of the Effective Date, and retroactive to the Petition Date, Howard has relief from the automatic stay and any discharge injunction to pursue any and all rights and remedies with respect to the RLI Stock, the Irrevocable Instructions, and the Reserve Accounts.

10.    As of the Effective Date, and retroactive to the Petition Date, to the extent that the automatic stay and/or any discharge injunction may apply, Howard has relief from the automatic stay and any discharge injunction to prosecute, and enforce any resultant judgment, in the APII FT Action, the ECP FT Action, the FNC Action, and/or the Levene Neale Action.

11.    As of the Effective Date, and retroactive to the Petition Date, to the extent that the automatic stay and/or any discharge injunction may apply, Howard has relief from the automatic stay and any discharge injunction to enforce the Judgment against judgment debtors other than the Debtors.

12.    As of the Effective Date, the Abselets, and each of them, have (A) relief from the automatic stay and any discharge injunction to pursue any and all rights and remedies that they may have to avoid, have declared void, set aside, nullify, or to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

- 2 -

ORDER GRANTING MOTION TO APPROVE SETTLEMENT

recover damages for, the Foreclosures and the resultant apparent extinguishment of the $2M DOTs and/or Howard's Abstract of Judgment, and (B) authority to name the Trustee as a party to that action and have relief from 28 U.S.C. § 959(a) to the extent that such relief is necessary; *provided, however*, the Abselets, and each of them, may not seek, and may not obtain, any relief against the Trustee that increases or changes the Abselets' rights against the Estates as provided in the Agreement.

13. As of the Effective Date, the Abselets, and each of them, have relief from the automatic stay and any discharge to take such steps as they deem appropriate to perfect, or to continue perfection, of their liens and security interests.

14. As of the Effective Date, Howard has relief from the automatic stay and any discharge injunction to seek an award in his Collection Action of his Post-May 31 Fees and/or to file a memorandum of post-judgment costs.

15. As of the Effective Date, if and when Israel, ECPLP, and/or APII obtain a judgment that their claims against the Debtors are non-dischargeable, Howard, Israel, ECPLP, ECP Building, and APII have relief from the automatic stay and any discharge injunction to enforce Israel's, ECPLP's, ECP Building's and APII's claims against the Debtors.

16. APII, ECPLP, ECP Building, RLI, RLL, S&R, Madison, S.Y., and M.Y., and each of them, shall not be substantively consolidated with the Estates, without Israel's consent, which Israel may give or withhold in his sole and absolute discretion.

17. Any and all successor chapter 11 trustees, chapter 7 trustees, and chapter 13 trustees in the Bankruptcies and all parties in interest in the Bankruptcies shall be bound by this Agreement and this Order to the same extent that the current Trustee is bound.

18. The respective rights and the obligations of the Parties, or any of them, under this Order and the Agreement (A) shall survive (1) confirmation of any and all plan/s of reorganization and/or liquidation in the Bankruptcies, including amendments

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

- 3 -

ORDER GRANTING MOTION TO APPROVE SETTLEMENT

1   and replacements to, and restatements of, such plan/s, if any, (2) conversion of the

2   Bankruptcies to chapter 7 liquidations, and/or (3) dismissal of the Bankruptcies, and

3   (B) shall not be nullified, modified, limited, or adversely effected, by plan/s of

4   reorganization and/or liquidation, without the Abselets' prior written consent, in their

5   sole and absolute discretions.

6        19.    To the extent permitted by law, the Court shall retain jurisdiction, and

7   shall have exclusive jurisdiction, to hear and determine all matters arising from the

8   implementation of this Order and/or arising from or related to any dispute under the

9   Agreement, except that the District Court hearing Howard's Collection Action shall

10  hear and decide any and all motions for an award of Howard's Post-May 31 Fees.

11

12  Dated: _____        _____

13                                    The Honorable Geraldine Mund
                                      United States Bankruptcy Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

- 4 -

ORDER GRANTING MOTION TO APPROVE SETTLEMENT

DOCS_SF:94607.2 32274/001

**Exhibit IV**
**-**
**LIST OF ASSETS SUBJECT TO SECURITY AGREEMENT**

## EXHIBIT C

### BRONX PROPERTIES

2723 Webb

770 and 780 Garden

509 W. 212 Street

828 Courtland

1535 Taylor

1026 Woodycrest

2427 Webster Avenue

**EXHIBIT C**                                            Doc. # CC-281080 v.1

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Mark A. Neubauer Esq.
Steptoe & Johnson LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Alliance Lending Group, Inc. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 660 S. Figueroa Street, 24th Floor | Los Angeles | CA | 90017 | |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | California | C2383235 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Yashouafar | Massoud | Aaron | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 660 S. Figueroa Street, 24th Floor | Los Angeles | CA | 90017 | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Abselet | Howard | L. | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 114 Pine Street | Port Jefferson Station | NY | 11776 | |

4. This FINANCING STATEMENT covers the following collateral:

All of Debtors' right, title and interest, direct or indirect, if any, in the Class Action Reserve established and funded under the Second Amended Chapter 11 Plan of Reorganization (Dated June 20, 2011), as Modified, of Roosevelt Lofts, LLC, a Delaware limited liability company, pending in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, Case No. 1:09-bk-14214-GM.

All of Debtors' right, title and interest, if any, in their shares of the capital stock of The Roosevelt Lofts Inc., a California corporation.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

International Association of Commercial Administrators (IACA)

**UCC FINANCING STATEMENT ADDITIONAL PARTY**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | 19a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | Alliance Lending Group, Inc. | | |
| | 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

20. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (21a or 21b) - do not abbreviate or combine names

| | 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | Yashouafar | Solyman | | |
| | 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | 660 S. Figueroa Street, 24th Floor | Los Angeles | CA | 90017 | |

| 21d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (22a or 22b) - do not abbreviate or combine names

| | 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 22d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (23a or 23b) - do not abbreviate or combine names

| | 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 23d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

24. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE) - insert only one name (24a or 24b)

| | 24a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

25. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE) - insert only one name (25a or 25b)

| | 25a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (FORM UCC1AP) (REV. 05/22/02)

International Association of Commercial Administrators (IACA)

▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

⌐
  Mark A. Neubauer Esq.
  Steptoe & Johnson LLP
  2121 Avenue of the Stars, Suite 2800
  Los Angeles, CA  90067
                                             ⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
**Alliance Lending Group, Inc.**

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **660 S. Figueroa Street, 24th Floor** | **Los Angeles** | **CA** | **90017** | |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **Corporation** | 1f. JURISDICTION OF ORGANIZATION **California** | 1g. ORGANIZATIONAL ID #, if any **C2383235** | ☐ NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| OR | 2b. INDIVIDUAL'S LAST NAME **Yashouafar** | FIRST NAME **Massoud** | MIDDLE NAME **Aaron** | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **660 S. Figueroa Street, 24th Floor** | **Los Angeles** | **CA** | **90017** | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

| OR | 3b. INDIVIDUAL'S LAST NAME **Abselet** | FIRST NAME **Howard** | MIDDLE NAME **L.** | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **114 Pine Street** | **Port Jefferson Station** | **NY** | **11776** | |

4. This FINANCING STATEMENT covers the following collateral:

Please see attached Exhibit A for description of collateral.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)    International Association of Commercial Administrators (IACA)

**UCC FINANCING STATEMENT ADDITIONAL PARTY**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | 19a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | **Alliance Lending Group, Inc.** | | |
| | 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |

20. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (21a or 21b) - do not abbreviate or combine names

| | 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | **Yashouafar** | **Solyman** | | | |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **660 S. Figueroa Street, 24th Floor** | **Los Angeles** | **CA** | **90017** | |
| 21d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID #, if any | ☐ NONE |

22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (22a or 22b) - do not abbreviate or combine names

| | 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 22d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID #, if any | ☐ NONE |

23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (23a or 23b) - do not abbreviate or combine names

| | 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 23d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID #, if any | ☐ NONE |

24. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE) - Insert only one name (24a or 24b)

| | 24a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

25. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE) - Insert only one name (25a or 25b)

| | 25a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (FORM UCC1AP) (REV. 05/22/02)

Exhibit "A"

All of Debtors' right, title and interest, direct or indirect, if any, in the partnership and membership interests held by Debtors in the following entities, including without limitation Debtors rights to any distributions of cash or other property from the same:

Figueroa Tower – I LP, a California limited partnership
FT-I GP LLC, a Delaware limited liability company
Teak Holdings Limited, L.P., a California limited partnership
Figueroa Tower – II LP, a California limited partnership
FT-II GP LLC, a Delaware limited liability company
Carla Ridge LLC, a California limited liability company
Figueroa Tower – III LP, a California limited partnership
FT-III GP LLC, a Delaware limited liability company
Hexagon Holdings Limited, L.P., a California limited partnership
Milbank 505 Sam Houston I, LLC, a Delaware limited liability company
Milbank 505 Sam Houston II, LLC, a Delaware limited liability company
Milbank 505 Sam Houston III, LLC, a Delaware limited liability company
Milbank 505 Sam Houston IV, LLC, a Delaware limited liability company
Milbank 505 Sam Houston V, LLC, a Delaware limited liability company
Milbank 509 West 212, LLC, a Delaware limited liability company
Milbank 509 West 212-I, LLC, a Delaware limited liability company
Supreme Property Investment Co.
Proton, a California general partnership
Milbank 525 Sam Houston I, LLC, a Delaware limited liability company
Milbank 525 Sam Houston II, LLC, a Delaware limited liability company
Milbank 525 Sam Houston III, LLC, a Delaware limited liability company
Milbank 525 Sam Houston IV, LLC, a Delaware limited liability company
Milbank 525 Sam Houston V, LLC, a Delaware limited liability company
San Julian Partnership
Milbank 521 Sam Houston I, LLC, a Delaware limited liability company
Milbank 521 Sam Houston II, LLC, a Delaware limited liability company
Milbank 521 Sam Houston III, LLC, a Delaware limited liability company
Milbank 521 Sam Houston IV, LLC, a Delaware limited liability company
Milbank 521 Sam Houston V, LLC, a Delaware limited liability company
Milbank 770 Garden, LLC, a Delaware limited liability company
Milbank 828 Courtlandt, LLC, a Delaware limited liability company
Milbank 1026 Woodycrest, LLC, a Delaware limited liability company
Milbank 1535 Taylor, LLC, a Delaware limited liability company
2427 Webster LLC
Milbank 2723 Webb, LLC, a Delaware limited liability company

**Exhibit V.B**

**PARTNERSHIP AND MEMBERSHIP INTEREST ASSIGNMENT**

## PARTNERSHIP AND MEMBERSHIP INTERESTS ASSIGNMENT

This Partnership and Membership Interests Assignment is entered into as of Effective Date (the "**Assignment**"), by David K. Gottlieb ("**Assignor**"), the duly appointed trustee of the bankruptcy estates of Massoud Aaron Yashouafar and Solyman Yashouafar and Israel Abselet ("**Assignee**") with respect to the following facts and circumstances:

A. Assignor, Assignee, and Howard Abselet ("**Howard**") are parties to that certain Settlement Agreement and Mutual Releases (the "**Agreement**")[1] regarding the settlement of claims of Assignee and Howard against the bankruptcy estates of Massoud Aaron Yashouafar and Solyman Yashouafar (the "**Debtors**").

B. Pursuant to the Agreement, Assignor agreed to assign certain partnership and membership interests to Assignee.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee acknowledge, intending to be legally bound, Assignor and Assignee agree as follows:

1. Assignment.   Effective as of the Effective Date, Assignor hereby assigns to Assignee the Debtors' Estates' interests, as of the Petition Date, in and to Madison Equities, L.P., a Nevada limited partnership, S&R Equities, L.P., a Nevada limited partnership, MAY - US, LLC, a California limited liability company formerly known as M.Y., L.L.C., and S.Y., L.L.C., a California limited liability company, whether direct or indirect, real or personal, known or unknown, contingent or vested, asserted or unasserted, liquidated or unliquidated, together with all rights and claims of every nature whatsoever related in any way to such interests, whether as a creditor or interest holder, but not the obligations arising from such interests (the "**Assigned-Entity Interests**").

2. Representation. Assignor represents and warrants to Assignee that Assignor has not sold, assigned, transferred, alienated, pledged, encumbered, or otherwise granted any person any interest, right, or claim, in or to the Assigned-Entity Interests, whether direct or indirect, real or personal, known or unknown, contingent or vested, asserted or unasserted, liquidated or unliquidated.

3. Amendment.  This Assignment may be amended only by a writing signed by both Assignor and Assignee.

4. Execution in Counterparts.  This Assignment may be executed in counterparts and delivered by the delivery of facsimile signatures; provided, however, that if the parties exchange facsimile signatures, each of them agrees to provide the other, promptly upon request, with a copy of this Assignment bearing his original signature.

---

[1] All capitalized terms not defined herein have the meanings used in the Agreement.

1

5. <u>Delivery Pursuant to the Agreement</u>.  Notwithstanding anything to the contrary herein, Assignor and Assignees are executing and delivering this Assignment in accordance with and subject to all of the terms, provisions, conditions, disclaimers and acknowledgments set forth in the Agreement.

6. <u>Governing Law</u>.  The laws of the State of California, including laws regarding statutes of limitation and/or laches, but not including conflicts of law principles, will govern the interpretation, application, and enforcement of this Agreement except to the extent that the laws of the United States of America preempt the laws of the State of California.

**IN WITNESS WHEREOF**, Assignor and Assignee have executed and delivered this Assignment on the respective dates below, effective as of the Effective Date.

Executed on the _____ day of _____ 2017

**ASSIGNOR**:

DAVID K. GOTTLIEB, as Chapter 11 trustee of the bankruptcy estates of Massoud Aaron Yashouafar and Solyman Yashouafar

_____
David K. Gottlieb, Trustee

Executed on the _____ day of _____ 2017

**ASSIGNEE**:

_____
ISRAEL ABSELET

2

**Exhibit XIV.B**

**SINA'S REPRESENTATIONS RE $2M LOAN**

TO DAVID K. GOTTLIEB in his capacity as Chapter 11 trustee of the bankruptcy estates (the "**Estates**") of (1) Solyman Yashouafar ("**Solyman**") in Case No. 1:16-bk-12255-GM in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"), and (2) Massoud Aaron Yashouafar ("**Massoud**") in Case No. 1:16-bk-12408-GM in the Bankruptcy Court:

I, Sina Abselet, hereby represent and warrant to you that I have assigned to Israel Abselet any and all rights and remedies that I have against Solyman and Massoud and their bankruptcy estates.

Sina Abselet

## Exhibit XVIII
## (Notice/Contact Information)

**If to the Trustee:**

David K. Gottlieb
D. Gottlieb & Associates, LLC
17000 Ventura Blvd., Suite 300
Encino, California, 91316
Main:  818.539.7720
Fax:     818.436.0729
Email: dgottlieb@dkgallc.com

With a copy to:

Jeremy V. Richards, Esq.
John W. Lucas, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Telephone:
Facsimile:
Email:  jrichards@pszjlaw.com
          jlucas@pszjlaw.com

**If to the Abselets or either of them:**

Israel Abselet
114 Pine Street
Port Jefferson Station, NY  11776

With a copy to:

Henry S. David, Esq.
The David Firm®
617 W. 7th St., Suite 702
Los Angeles, CA 90017
Telephone:  213.550.4020
Facsimile:    213.550.4010
Email:  hdavid@davidfirm.com